THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INNOVATIVE SOLUTIONS INTERNATIONAL, INC.,<br><br>Plaintiff,<br>v.<br><br>HOULIHAN TRADING CO, INC., *et al.*,<br><br>Defendants. | CASE NO. C22-0296-JCC<br><br>ORDER |

This matter comes before the Court on Defendant North South Foods Group, Inc.'s ("North South") motion to dismiss (Dkt. No. 35). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS North South's motion for the reasons explained herein.

I.   BACKGROUND

This is a product liability action brought by Plaintiff Innovative Solutions International, Inc. (Dkt. No. 22.) According to the Second Amended Complaint, Plaintiff had a contract with Trader Joe's to sell chicken burgers, but Trader Joe's terminated the relationship after customers reported finding bones and bone fragments in the burgers. (*Id.* at 2–3.) Plaintiff brought suit against each of the companies in the supply chain, including North South, claiming breach of express warranty, breach of implied warranty, negligent misrepresentation, negligence, and violation of Washington's Consumer Protection Act in connection with Plaintiff's receipt of

tainted chicken product. (*Id.* at 12–15.) Plaintiff asserts North South is one of many "supply chain defendants" involved in the shipment, sale, and misrepresentation of the product. (*See id*. at 4.)

According to North South, it is a Florida corporation that buys and sells wholesale meat products through independent agents around the country. (Dkt. No. 35 at 3.) North South has no direct contact with any person in Washington, has no physical presence in Washington, and has never marketed or advertised in Washington. (*Id.* at 4.) It purchased the product at issue from Henley's Wholesale Meats, an Arkansas corporation, and sold it to Cook International Trade & Brokerage, Inc. ("Cook"), a Florida corporation. (*Id.* at 6.) These transactions were all completed by LB Distribution, a Kansas corporation and an independent agent of North South, and occurred outside the state of Washington. (*Id.* at 6.) The product then was sold down the supply chain before it eventually was purchased by Plaintiff in Washington.

Given its lack of connection to Washington, North South moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(2) based on this Court's lack of personal jurisdiction. (Dkt. No. 35 at 3.)

## II. DISCUSSION

### A. Legal Standard

When a defendant moves to dismiss a case pursuant to Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the exercise of jurisdiction is appropriate. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). If a Rule 12(b)(2) motion is supported only be written materials, such as the pleadings and affidavits, "the plaintiff need only make a *prima facie* showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). The Court must resolve any conflicts in the documentary evidence in favor of the plaintiff. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). The Court will not, however, assume the truth of allegations in a pleading which are contradicted by affidavit. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

To determine whether it has jurisdiction over a defendant, a federal court applies the law of the state in which it sits. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Washington's long-arm statute grants courts the maximum jurisdictional reach permitted by the Due Process Clause. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004) (citing RCW 4.28.185). Thus, the Court must determine whether the exercise of jurisdiction over North South comports with due process limitations. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413 (1984). Due process allows a court to exercise jurisdiction if doing so does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The extent and nature of contacts that a defendant has can result in either general or specific jurisdiction.[1] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

### B. Specific Jurisdiction

Here, Plaintiff argues that the Court has specific jurisdiction over North South. (Dkt. No. 60 at 8–15.) The Ninth Circuit applies a three-part test for specific jurisdiction over a non-resident defendant:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff

---

[1] Plaintiff appears to concede that this Court does not have general jurisdiction. General jurisdiction requires the defendant to have contacts with the forum state that are "so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (cleaned up). North South is a Florida corporation with no direct contacts with Washington, so this Court does not have general jurisdiction here.

bears the burden of satisfying the first two prongs of the test. *Id.* If the plaintiff succeeds, the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).

The first prong examines whether the defendant has purposely availed itself of the privilege of conducting activity in the forum state or has purposely directed its activities towards the state. Purposeful availment requires something more than the mere placement of a product into the stream of commerce. *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 860 (9th Cir. 2015) (citing *Holland Am. Line Inc. v. Wartsilla N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007)).

The Ninth Circuit recently analyzed two Supreme Court cases that provide a range of what constitutes "something more." *Id.* at 860–61 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)). On one end is *World-Wide Volkswagen*. In that case, the plaintiff sued a car dealership, a New York corporation, and the regional distributor, a New York corporation, who distributed vehicles to New York, New Jersey, and Connecticut, in Oklahoma after getting in a car accident there. *World-Wide Volkswagen*, 444 U.S. at 288–89. The Court concluded the defendants had not purposely availed themselves of the forum state because they carried on no activity in Oklahoma and did not solicit business or advertise there. *Id.* at 559. On the other end is *Ford Motor Co. v. Montana Eighth Judicial District*, 141 S. Ct. 1017 (2021). That case involved two plaintiffs from Montana and Minnesota who sued Ford Motor Company in their home states after getting in car accidents there. *Id.* at 1023. The Court determined Ford had purposely availed itself of the forum states because it (1) advertised its products in state in radio ads, prints ads, and direct mail, (2) sold the exact product at issue at dealerships around the state, and (3) had dealers in state the regularly maintained Ford cars and distributed parts to auto shops in state. *Id.* at 1028.

In this case, Defendant submitted declarations stating it has never marketed or advertised in Washington, has no physical presence in state, and has no registered agent here. (Dkt. No. 35

at 4.) Defendant also asserts it has made minimal direct sales or purchases in state, none of which had to do with the meat products at issue. (*Id.* at 4–5.)

Plaintiff argues that North South's effort to serve a nationwide market establishes purposeful availment. (Dkt. No. 60 at 8.) To support this argument, Plaintiff points to a Bloomberg profile of North South stating the company "serves customers worldwide" and a similar statement on a North South employee's LinkedIn page. (*Id.*) Plaintiff also alleges North South has a network of independent agents who potentially distribute products in the state. (*Id.* at 9.) Plaintiff notes that LB Distribution, the independent agent who sold the chicken at issue for North South, also states on its website, "[w]e have long standing relationships with most US and Canadian protein providers . . . ." (*Id.* (quoting Dkt. No. 61-4 at 3–4) (emphasis omitted).)

This case appears to be much closer to *World-Wide Volkswagen* than to *Ford Motor Co.* Plaintiff does not point to any instance where North South directly sold its products or marketed in Washington. In fact, Plaintiff does not point to any statements from North South directly saying it sells products in Washington. Instead, Plaintiff asks the Court to make an inferential leap that North South must be directing products to Washington based on broad statements that North South serves customers worldwide. (Dkt. No. 60 at 8.) Plaintiff also alleges North South has purposefully availed itself because it has used distribution partners to buy and sell products in Washington. (*Id.* at 9.)

However, the Court will not assume the truth of jurisdictional allegations contradicted by affidavit.[2] *Data Disc, Inc.*, 557 F.2d at 1284. And North South provides a declaration stating it has never marketed, advertised, or had a physical presence in Washington. (Dkt. No. 35 at 4 (citing Dkt. No. 36 at 2).) North South also provides a declaration stating that through its agents, it has only made six sales in Washington, out of thousands of sales, and made less than twenty purchases in state since 2019. (Dkt. No. 65 at 2–4.) Although North South has done minimal

---

[2] Declarations and affidavits are functional equivalents in this context. *LNS Enterprises*, 22 F.4th at 858 (citing 28 U.S.C. § 1746).

business in Washington, these transactions come nowhere close to the sales and actions taken by the defendants in *Ford Motor Co.* Plaintiff makes broad allegations that North South's alleged nationwide contacts are sufficient to subject it to jurisdiction in Washington. But based on the facts presented, Plaintiff has failed to show that North South did more than place its product in the stream of commerce such that it should be subject to jurisdiction. Accordingly, the Court FINDS that Plaintiff has failed to demonstrate personal jurisdiction over North South.[3]

### C. Jurisdictional Discovery

A district court has broad discretion to permit or deny discovery to determine whether it has personal jurisdiction. *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). "It is well established that '[t]he burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists.'" *Gager v. United States*, 149 F.3d 918, 922 (9th Cir. 1998) (quoting *Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir. 1995)).

Plaintiff argues that jurisdictional discovery is necessary to understand the full extent of North South's contacts with Washington, including its purchases and sales in Washington, freight and broker commissions, and in-state distribution network. (Dkt. No. 60 at 16–17.) However, North South subsequently filed a supplemental declaration addressing each of the factual issues Plaintiff seeks discovery on. (*See* Dkt. No. 65.) Therefore, Plaintiff's request to conduct jurisdictional discovery is DENIED.

## III. CONCLUSION

For the foregoing reasons, North South's motion to dismiss (Dkt. No. 35) is GRANTED

---

[3] Based on the foregoing analysis, Plaintiff has failed to meet its burden under the first prong alone. However, Plaintiff's claims similarly fail under the second prong, which requires the claims to "arise[] out of or relate[] to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at 802. Plaintiff again points to North South's nationwide efforts to sell meat products as sufficient forum-related activities. (Dkt. No. 60 at 11.) But North South provides a declaration stating it only made six sales in Washington, none of which were the meat product at issue in this case. (Dkt. No. 64 at 5.) Thus, Plaintiff's claims do not arise out of or relate to North South's forum-related activities. Because Plaintiff fails to meet its burden on the first two prongs for specific jurisdiction, the Court declines to address the third prong.

1  and Plaintiff's request for jurisdictional discovery is DENIED. Plaintiff's claims against North
2  South are DISMISSED without prejudice.

4  DATED this 26th day of September 2022.

John C. Coughenour
UNITED STATES DISTRICT JUDGE