THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INNOVATIVE SOLUTIONS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> HOULIHAN TRADING CO, INC., *et al.*, <br><br> Defendants. | CASE NO. C22-0296-JCC <br><br> ORDER |

This matter comes before the Court on Defendant Brighton Group, LLC's ("Brighton Group") motion to dismiss (Dkt. No. 86). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I.  **BACKGROUND**

This is a product liability action brought by Innovative Solutions International, Inc. ("Innovative"). (Dkt. No. 83.) Innovative had a contract with Trader Joe's to sell chicken burgers, but Trader Joe's terminated the relationship after customers found bone fragments in the burgers. (*Id.* at 2–3.) Innovative brought suit against each of the companies in the supply chain, including Brighton Group, for breach of express warranty, breach of implied warranty, negligent misrepresentation, negligence, and violation of Washington's Consumer Protection Act. (*Id.* at

12–15.)

Brighton Group is an Arkansas limited liability company with its principal place of business in Springdale, Arkansas. (Dkt. No. 86 at 2.) Brighton Group moves to dismiss Plaintiff's claims and Defendant Houlihan Trading Co., Inc's ("Houlihan") counterclaims pursuant to Rule 12(b)(2) based on this Court's lack of personal jurisdiction.[1] (Dkt. No. 86.)

## II.   DISCUSSION

### A.   Legal Standard

When a defendant moves to dismiss a case pursuant to Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the exercise of jurisdiction is appropriate. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). If a Rule 12(b)(2) motion is supported only by written materials, such as the pleadings and affidavits, "the plaintiff need only make a *prima facie* showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). The Court must resolve any conflicts in the documentary evidence in favor of the plaintiff. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). The Court will not, however, assume the truth of allegations in a pleading which are contradicted by affidavit. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

To determine whether it has jurisdiction over a defendant, a federal court applies the law of the state in which it sits. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Washington's long-arm statute grants courts the maximum jurisdictional reach permitted by the Due Process Clause. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir.

---

[1] Defendant Pilgrim's Pride Corporation requests joinder in opposition to Innovative's opposition brief. (Dkt. No. 100.) Its main contention is that Brighton Group waived its right to challenge personal jurisdiction. (*Id.*) However, Brighton Group raised the issue of personal jurisdiction in its initial answer to both Innovative's complaint and Houlihan's counter-claims. (Dkt. Nos. 45 at 13, 46 at 11.) A party who includes a 12(b)(2) defense in a responsive pleading does not waive that defense. Fed. R. Civ. P. 12(h)(1). Moreover, participation in discovery does not waive objections to jurisdiction. *See Del Rio v. Ipeco Holdings, Ltd.*, 2018 WL 10741506, slip op. at 3 (W.D. Wash. 2018). Therefore, Brighton Group has not waived its objections to personal jurisdiction.

2004) (citing RCW 4.28.185). Thus, the Court must determine whether the exercise of jurisdiction over Brighton Group comports with due process limitations. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413 (1984). Due process allows a court to exercise jurisdiction if doing so does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The extent and nature of contacts that a defendant has can result in either general or specific jurisdiction.[2] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

B.  **Specific Jurisdiction**

Plaintiff and Houlihan both argue that the Court has specific jurisdiction over Brighton Group. (Dkt. Nos. 95 at 3–4, 98 at 6–12.) The Ninth Circuit applies a three-part test for specific jurisdiction over a non-resident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* If the plaintiff succeeds, the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).

The first prong examines whether the defendant has purposely availed itself of the

---

[2] Innovative and Houlihan concede that this Court does not have general jurisdiction. (Dkt. Nos. 95 at 3, 98 at 5 n.2.) General jurisdiction requires the defendant to have contacts with the forum state that are "so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (cleaned up). Brighton Group is an Arkansas corporation, who is not registered to do business in Washington and does not have any offices or employees in state, so the Court does not have general jurisdiction.

privilege of conducting activity in the forum state or has purposely directed its activities towards the state. Purposeful availment requires "something more" than the mere placement of a product into the stream of commerce. *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 860 (9th Cir. 2015) (citing *Holland Am. Line Inc. v. Wartsilla N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007)).

The Ninth Circuit has provided a range to help lower courts determine what constitutes "something more." *Id.* at 860–61 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)). On one end is *World-Wide Volkswagen*. In that case, the plaintiff sued a car dealership, a New York corporation, and the regional distributor, a New York corporation, who distributed vehicles to New York, New Jersey, and Connecticut, in Oklahoma after getting in a car accident there. *World-Wide Volkswagen*, 444 U.S. at 288–89. The Court concluded the defendants had not purposely availed themselves of the forum state because they carried on no activity in Oklahoma and did not solicit business or advertise there. *Id.* at 559. On the other end is *Ford Motor Corporation. v. Montana Eighth Judicial District*, 141 S. Ct. 1017 (2021). That case involved two plaintiffs from Montana and Minnesota who sued Ford Motor Company in their home states after getting in car accidents there. *Id.* at 1023. The Court determined Ford had purposely availed itself of the forum states because it (1) advertised its products in state in radio ads, prints ads, and direct mail, (2) sold the exact product at issue at dealerships around the state, and (3) had dealers in state that regularly maintained Ford cars and distributed parts to auto shops. *Id.* at 1028.

Innovative and Houlihan argue that Brighton Group purposely availed itself of the benefit of selling products in Washington. (Dkt. Nos. 95 at 3–4, 98 at 6–8.) In support, they cite an email from a representative at Houlihan to a representative at Brighton Group that states, "He's in Seattle so could still be a couple hours." (Dkt. No. 96 at 7.) They argue that this shows Brighton Group knew the chicken product was going to Seattle. (Dkt. Nos. 95 at 2, 98 at 4.)

Brighton Group argues that it merely placed a product into the stream of commerce and

its conduct falls well short of the "something more" needed for purposeful availment. (Dkt. No. 103 at 6–7.) Brighton Group emphasizes that it has never sold or purchased meat products in Washington, has never advertised or marketed here, and has no offices, employees, or agents here. (Dkt. No. 86 at 9.)

Essentially, Innovative and Houlihan assert a single email sent to Brighton Group mentioning a customer in Seattle establishes personal jurisdiction because it means that Brighton Group knew its product would end up in Washington. As an initial matter, the email chain does not conclusively show that Brighton Group intended its product to be sold in Seattle. (Dkt. No. 96 at 5–10.) Rather, Brighton Group appears to have agreed to a deal with Houlihan *before* it knew anything about the end customer. (*Id.* at 7–8.) Moreover, even if Brighton Group did know it was selling to a Washington consumer, this case still does not rise to the level of *Ford Motor Corporation*, or any of the cases cited by Innovative or Houlihan.

In *Plant Food Co-op v. Wolfkill Feed and Fertilizer Corporation*, the court stated it is not unreasonable for a seller to be subject to jurisdiction "[i]f the sale of a product of a distributor is not an isolated occurrence, but arises from the efforts of the distributor to serve, directly or indirectly, the market for its products in other states" and the product "was not brought into the forum by the unilateral act of another party." 633 F.2d 155, 159 (9th Cir. 1980). In contrast, in this case Brighton Group negotiated with Houlihan to sell chicken. It was not until the parties had agreed to a deal that Brighton Group even found out the customer was in Washington. It is not clear that Brighton Group did anything more than facilitate the sale to Houlihan, a Florida corporation, who then decided to sell the product to Innovative in Seattle. This is in contrast to *Plant Food Co-op*, where the defendant worked with a middleman in Washington specifically to set up a sale of goods to a customer in Montana. 633 F.2d at 157. Additionally, here there is no indication this sale was anything but an isolated occurrence.[3]

---

[3] Innovative's reliance on *Penny Newman Grain Company v. Midwest Services, Inc*, 2007 WL 4531700 (E.D. Cal. 2007), is similarly misplaced. (Dkt. No. 98 at 7.) In that case, the seller affirmatively told the middleman that its product would be suitable to the end buyer. *Penny*

In *Beverly Hills Fan Company v. Royal Sovereign Corporation*, the court found jurisdiction because defendants "purposefully shipped [the product] into Virginia through an established distribution channel." 21 F.3d 1558, 1565 (Fed. Cir. 1994). In contrast, here Brighton Group made a single transaction with Houlihan and only found out the product would make it to Washington *after* the parties had already agreed to the sale. There was no established distribution channel, and no indication Brighton Group intends to make any additional sales in Washington.

Merely placing a product into the stream of commerce does not constitute purposeful availment without "something more." Innovative and Houlihan have failed to prove that "something more." Accordingly, the Court FINDS that Innovative and Houlihan have failed to demonstrate this Court's personal jurisdiction over Brighton Group.[4]

### III.  CONCLUSION

For the foregoing reasons, Brighton Group's motion to dismiss for lack of personal jurisdiction (Dkt. No. 86) is GRANTED. Innovative's claims and Houlihan's counter-claims against Brighton Group are DISMISSED without prejudice.

DATED this 6th day of January 2023.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

*Newman*, 2007 WL 4531700, slip op. at 10. Stated differently, the seller in that case clearly intended the product to end up in state.

[4] Because Innovative and Houlihan have failed to meet their burden under the first prong for specific jurisdiction, the Court need not address the second or third prongs of the test.