THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INNOVATIVE SOLUTIONS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> HOULIHAN TRADING CO., INC., *et al.*, <br><br> Defendants. | CASE NO. C22-0296-JCC <br><br><br> ORDER |

This matter comes before the Court on Defendant Pilgrims' Pride Corp.'s ("Pilgrims'") motion to exclude or limit the expert testimony of Steven J. Kessler. (Dkt. No. 160.) Having considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES Defendant's motion for the reasons explained herein.

I.     **BACKGROUND**

Pilgrim's is in the business of preparing and packaging chicken for resale. (Dkt. No. 90 at 16.) In this instance, that chicken made its way through multiple vendors, before being sold to Defendant Houlihan Trading Co., Inc. ("Houlihan"), who, in turn, sold it to Plaintiff. (*Id.* at 16–17.) Plaintiff used that chicken in various food products, which it sold to Trader Joe's. (*Id.* at 18.) After customers complained about the presence of bones in the products, Trader Joe's terminated its contract with Plaintiff. (*Id.*) Plaintiff brought suit against various members of the supply chain, including Houlihan and Pilgrim's. (*Id.* at 19.). To support its claim for damages, Plaintiff

seeks the admission of expert testimony. Pilgrim's now petitions the Court to exclude or limit the expert testimony of Steven J. Kessler pursuant to Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

## II.   DISCUSSION

### A.   Legal Standard

A trial court is tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v*, 509 U.S. at 597. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (1) the expert's specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. Expert testimony is liberally admitted under the Federal Rules of Evidence. *Daubert*, 509 U.S. at 588. The Court's role is not to assess whether the expert is correct, but rather to "screen the jury from unreliable nonsense." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 969 (9th Cir. 2013).

### B.   Analysis

#### 1.   The Daubert Standard

Pilgrim's first argues that Mr. Kessler's testimony should be excluded because he employs a method that fails to follow a "generally accepted way" of calculating profits. (Dkt. No. 160.) At the outset, the Court notes that Defendant erroneously applies the *Frye* standard, which was superseded by Federal Rule of Evidence 702. *Daubert*, 509 U.S. at 589.

The *Daubert* standard was adopted as a departure from the rigorous "general acceptance" standard formulated in *Frye*. *Daubert*, 509 U.S. at 597. While an expert's method being generally accepted by a scientific community can be a helpful factor in its admissibility, the thrust of *Daubert* is to abandon the rigorous "general acceptance" test formulated in *Frye*.

1  *Daubert*, 509 U.S. at 589. Instead, *Daubert* interpreted Federal Rule of Evidence 702 to create a more flexible test for admissibility of expert testimony. *See* 509 U.S. at 594. *Daubert* and its progeny explain that an expert's testimony must be <u>reliable</u> and <u>relevant</u> to the trier of fact. 509 U.S. at 597. While a method being generally accepted is one of the factors a Court can consider when deciding whether to admit expert testimony, it is only one factor in a non-exhaustive list. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316-17 (9th Cir. 1995).

        2.  <u>Mr. Kessler's Method</u>

The *Daubert* inquiry requires an assessment of the "principles and methodology" by which expert evidence is established. First, Mr. Kessler sought to calculate Plaintiff's average growth rate in sales per annum, which he calculated to be a little over 10%. (Dkt. No. 226-2 at 6.) Mr. Kessler based the 10% growth rate on Plaintiff's average growth rate over a period of seven years, from 2013 through 2019. (*Id.* at 6.) Next, Mr. Kessler sought to calculate Plaintiff's lost profits for the year 2022. (*Id.* at 11.) To calculate lost profits for 2022, Mr. Kessler used the number of pounds of product sold in 2019 as a base, applied the 10% growth rate per annum, then applied the average selling price per pound of product for the given year. (*Id.*) In making these calculations, Mr. Kessler used an actual computation of the pounds of product sold, sales price, overhead costs, among other variables for the appropriate year. *Id*. Finally, Mr. Kessler took these two inputs – annual growth rate and net loss in profits – as a basis for calculating lost profits for the next 14 years. (*Id.* at 12.) Future lost profits were computed by applying the appropriate growth rate to the lost profits amount.[1] (*Id.* at 2.)

---

[1] Pilgrim's challenge to Mr. Kessler's report appears to be primarily with respect to the calculation of past loss and its usage in calculating future loss. Mr. Kessler includes a summary of the assumptions he used in computing Plaintiff's damages. (Dkt. No. 226 at 24). There, he explains his reasoning for the report's reliance on the collection period, his decision to exclude certain years, and his decision to use a 10% growth rate. (*Id.*)

ORDER
C22-0296-JCC
PAGE - 3

### 3. The Method Satisfies *Daubert*

A proponent of expert testimony must "explain precisely how they went about reaching their conclusions and point to some objective source" in order to support reliability. *Daubert*, 43 F.3d at 1319. Pointing to an "objective source" requires more than mere conclusory statements that the methods used are "universally accepted." *Dasho v. City of Federal Way*, 101 F. Supp. 3d 1025, 1032 (2015). Instead, it requires the proffering party demonstrate, in an objective way, that its expert has chosen a reliable scientific method. *Daubert*, 43 F.3d at 1319 n.11.

Mr. Kessler explained, in some detail, how he calculated Plaintiff's damages. (Dkt. No. 182 at 3-5.) Yet, Pilgrim's challenges the reliability of Mr. Kessler's report on the basis that the methods used have not been shown to be widely accepted. (Dkt. No. 227 at 6.) As the Court noted, however, the thrust of *Daubert* is to abandon the rigorous "general acceptance" test formulated in *Frye*. *Daubert*, 509 U.S. at 589. Rather, *Daubert* and its progeny require that an expert's testimony be <u>reliable</u> and <u>relevant</u> to the trier of fact. 509 U.S. at 597.

With this standard in mind, the Court is satisfied that the methodology utilized by Mr. Kessler is both *reliable* and *relevant*. Indeed, the method of calculating profits over a benchmark period and comparing it to a period after an alleged injury has occurred is a widely utilized method accepted across the majority of jurisdictions. *See e.g., Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 258 (1946). As both parties point out, there is a long line of cases where a "damages expert" utilizes what may best be described as the "profit history" method or the "before and after method." *See Larsen v. Walton Plywood Co.*, 90 P.2d 677, 687 ("[t]he usual method of proving lost profits is from profit history.")

Accordingly, despite Mr. Kessler's failure to describe his methodology as either the "before and after" method or the "profit history" method, his method of calculation is fundamentally the same as that endorsed in *Bigelow*. In light of the liberal thrust advocated by *Daubert*, the Court is satisfied with the reliability of the method used by Mr. Kessler. To the extent Pilgrim's disagrees with the specific calculations made, it will be able to cross-examine

C22-0296-JCC
PAGE - 4

Mr. Kessler at trial, which is the "appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### 4. The Underlying Data in Kessler's Report is Sufficient

In the alternative, Pilgrim's petitions the Court to exclude Mr. Kessler's testimony because of faulty data. (Dkt. No. 160.) For an expert witness to testify, the proponent must show that the testimony is based on sufficient facts. Fed. R. Evid. 702(b). However, because the emphasis of Rule 702(b) is not to "authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other," Pilgrim's argument fails. Indeed, Pilgrim's challenge here amounts to a disagreement about the underlying set of facts for which exclusion is precluded. Pilgrim's cites a case from this District excluding evidence based on faulty data. (*See* Dkt. No. 227 at 7). In that case, however, the expert witness testified that the facts used were not calculated from actual costs, but rather by dividing expenses from all of the defendant's products. *Nat'l Products*, 2017 WL 5499801 at *2. Notably, that defendant made no attempt to argue this was a correct calculation. *Id*. By contrast, Plaintiff here has used methods found to be both reliable and relevant.

### 5. Failure to Mitigate

Pilgrim's further argues that Mr. Kessler's decision not to include any mitigation as part of his calculation of damages renders his testimony unreliable. (Dkt. No. 227 at 9-11.) Specifically, Pilgrim's argues that Mr. Kessler should have included Plaintiff's potential profits in offsetting the damages calculated in his report. (Dkt. No. 227 at 10.) The Court disagrees. While the failure to mitigate can be considered in a damage award, the Court is unaware of authority standing for the proposition that testimony should be excluded if it does not incorporate mitigation as part of its damages. Pilgrim's cites caselaw relating to the award of damages to support an argument that fundamentally rests on evidentiary principles. Ultimately, Mr. Kessler's decision not to include mitigation does not make his testimony unreliable or irrelevant. *Daubert*, 509 U.S. at 597. Whether Plaintiff could have mitigated its damages is a question of fact for the

jury. *Affiliated FM Ins. Co. v. LTK Consulting Services, Inc.*, 15 F. Supp. 3d 1116, 1129 (W.D. Wash. 2014).

6. <u>15-Year Window</u>

As the Court previously noted, Mr. Kessler's report includes a projected loss of profits across a 15-year period. (Dkt. No. 183 at 15). Pilgrim's argues that "no reason . . . is given . . . for [expert's] extending the projected sales . . . for another 15 years after the recall." (Dkt. No. 160 at 7). Not so. Mr. Kessler's report notes that a 15-year period was chosen because of the 15-year sales history between Plaintiff and Trader Joe's. (Dkt. No. 183 at 15 n.4.) Furthermore, in its 30(b)(6) deposition, the corporate representative from Trader Joe's noted that it would not "be uncommon for the chile lime burger to stay in stores for another decade or so." (Dkt. No. 181 at 13.) While the Court is sympathetic to Pilgrim's argument that a 15-year business relationship does not guarantee 15 more years of business, such a guarantee is not required for the admissibility of evidence. *See Supervalu Inc. v. Associated Grocers Inc.*, 2007 WL 623432, slip op. at 5 (D. Minn. 2007) (admitting expert testimony that based its opinion on a contract being renewed for a period of years.) Here, as there, the party seeking admission of expert testimony had an existing contract and was able to show a history of profits. *Id*. at 3.

7. <u>Kessler's Assumptions</u>

Finally, Defendant challenges a key assumption made by Mr. Kessler in his computation of damages. Specifically, Pilgrim's takes issue with Mr. Kessler's decision to exclude the year 2020 from his computation of damages because of the COVID pandemic. Again, Pilgrim's fails to explain why decisions made by an expert are anything more than questions of reasonableness best left for a jury to decide. Indeed, where the expert meets the reliability threshold as explained in *Daubert*, questions regarding the weight to be accorded the testimony are for the jury, not the Court. 509 U.S. at 579. In other words, whether Mr. Kessler made reasonable assumptions in calculating damages is a question for the jury, and not grounds for exclusion.

## III. CONCLUSION

Ultimately, the Court is satisfied that Mr. Kessler's expert testimony is based upon sufficient facts and data and that his testimony is the product of principles which have been reliably applied in his evaluation of Plaintiff's damages. For the forgoing reasons, the Court DENIES Defendant's motion to exclude or limit Steven J. Kessler's expert testimony. (Dkt. No. 160.)

DATED this 20th day of November 2023.

John C. Coughenour

UNITED STATES DISTRICT JUDGE