THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

INNOVATIVE SOLUTIONS
INTERNATIONAL, INC.,

                Plaintiff,

    v.

HOULIHAN TRADING CO., INC., *et al.*,

                Defendants.

CASE NO. C22-0296-JCC

ORDER

This matter comes before the Court on Plaintiff Innovative Solutions International, Inc.'s ("Innovative") motion for summary judgment (Dkt. No. 153) and Defendant Pilgrim's Pride Corporation's ("Pilgrim's") cross-motion for summary judgment.[1] (Dkt. No. 162.) Having thoroughly considered the briefing and the relevant record, the Court finds oral argument unnecessary[2] and hereby GRANTS in part and DENIES in part each motion for the reasons explained herein.

---

[1] In its response motion, Houlihan joins Plaintiff's motion for summary judgment against Pilgrim's with respect to the express warranty and negligent misrepresentation claims. (*See* Dkt. No. 176 at 2.)

[2] None of the parties could be prejudiced by a ruling solely on the papers, in light of the substantial briefing filed and clear authority on each relevant legal issue. *See Jasinski v. Showboat Operating Co.*, 644 F.2d 1277, 1281 (9th Cir. 1981) ("The district court's struggle with a close and critical question, evident on the face of the court's opinion, is enough to establish prejudice to the losing party.")

## I.    BACKGROUND

This action arises from a supply chain dispute associated with chicken "breast trim." (*See generally* Dkt. No. 83.) Namely, the parties contest whether "breast trim" may contain bone under their supply agreement(s). (*Id.*) This, in turn, determines whether those agreement(s) were violated. Defendant Pilgrim's processed the chicken at issue (herein referenced as "chicken 584").[3] (Dkt. No. 83 at 9.) And it indisputably contained bone. (Dkt. No. 155-2 at 3.) Yet, when selling "chicken 584," Pilgrim's included a fact sheet describing the product as "breast trim." (Dkt. No 163-8 at 2–4.)

Over time, "chicken 584" passed through numerous intermediaries, including Defendant Houlihan Trading Co., Inc. ("Houlihan"). (Dkt. No. 163.) Houlihan, in turn, offered to sell the chicken to Innovative, a food products manufacturer. (*See generally* Dkt. No. 163-8.) In doing so, Houlihan described it as "B/S"[4] and "breast trim." (Dkt. No. 163-8 at 2.) Houlihan also sent Innovative a copy of Pilgrim's' fact sheet and an image of a different Pilgrim's label—both of which described the product as "breast trim." (*Id.*) Innovative then purchased the chicken, (*see* Dkt. No. 154-36), to make its Chile Lime Chicken burgers, which it sold exclusively to Trader Joe's supermarket. (Dkt. No. 179-5.) When customers later complained about bones in the Chile Lime Chicken burgers, (a) Innovative recalled the product, (*see* Dkt. No. 179-3 at 2) (USDA recall notice), and (b) Trader Joe's terminated its business relationship with Innovative. (Dkt. No. 154-2 at 8–10.)

In response, Innovative sued Houlihan and Pilgrim's,[5] alleging breach of contract, breach of express warranty, breach of implied warranty, negligent misrepresentation, negligence, and

---

[3] 584 is the breast trim's product code. (*See, e.g.*, Dkt. No. 83-1 at 4.)

[4] Denotes Boneless/Skinless. (*See* Dkt. No. 154-6 at 3.)

[5] Since then, Innovative added several supply chain defendants, which the Court dismissed, leaving only these original defendants. (*See, e.g.*, Dkt. Nos. 74, 121.)

Washington's Consumer Protection Act ("CPA") claims.[6] (Dkt. No. 83.) Innovative now moves for summary judgment on all claims (Dkt. No. 153), Pilgrim's cross-moves on some of its claims (Dkt. No. 162), and Houlihan joins Innovative in moving for summary judgment on the express warranty and negligent misrepresentation claims (*see* Dkt. No. 176 at 2).

## II.   DISCUSSION

### A.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But once the moving party properly makes and supports their motion, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B.   Federal Preemption

According to Pilgrim's, the Poultry Products Inspection Act ("PPIA") preempts any state claims related to a U.S. Department of Agriculture ("USDA") approved product label. (*See* Dkt.

---

[6] Innovative asserts the same causes of action against Pilgrim's as it does against Houlihan, save for its breach of contract claim, which it asserts solely against Houlihan. (*See generally* Dkt. No. 83.)

No. 162 at 23.) Pilgrim's argues that because the USDA's Food Safety and Inspection Service ("FSIS") determined that Pilgrim's did not mislabel "chicken 584," all claims against it must be dismissed—including those involving the product fact sheet. (*Id.* at 24.)

The PPIA regulates the nation's poultry market to ensure that poultry is "wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 451. As part of the regulation of this market, the PPIA imposes labeling requirements, including mandating that the FSIS preapprove certain products' labels. *See generally* 9 C.F.R. § 412.1 (2023); 21 U.S.C. § 457(c). And to ensure national uniformity, the PPIA expressly preempts any state from imposing additional or different "marking, labeling, [or] packaging" requirements on poultry labels. 21 U.S.C. § 467e; *Nat'l Broiler Council v. Voss,* 44 F.3d 740, 744 (9th Cir. 1994) (citing 1968 U.S.C.C.A.N. 3426, 3442). The PPIA also preempts state liability laws that indirectly impose additional or different labeling standards. *See Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1288 (9th Cir. 2021). This is because complying with such laws would effectively require modifying FSIS-mandated labels. *Id.* But for the PPIA to apply at all, the representation at issue must constitute "labeling" under the PPIA's express preemption provision. Thus, whether the PPIA preempts Innovative's claims turns, at least in part, on whether Pilgrim's representations—namely, its product fact sheet—constitute labeling under the PPIA.

Under the Federal Food, Drug, and Cosmetic Act ("FD&C Act"), a "label" is "a display of written, printed, or graphic matter upon any article or the [article's] immediate container," and "labeling" means "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 453(s). Here, only the label was affixed to or accompanied the product at issue. (*See* Dkt. Nos. 163 at 6, 163-9.) The fact sheet was not. (*Id.*) Because the express preemption provision does not apply to non-labels, *see* 21 U.S.C. § 467e, the PPIA's express preemption is limited to the

representations on the "chicken 584" label.[7] *See, e.g.*, *Chem. Specialties Mfrs. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 946 (9th Cir. 1992) (determining that the Federal Insecticide, Fungicide, and Rodenticide Act did not preempt representations on point-of-sale warnings because the warnings were "neither written on the [product] nor attached to it," and, therefore, were not labels).

Having concluded that the PPIA's express preemption provision governs the "chicken 584" label, the Court next considers whether the FSIS's determination actually preempts claims involving that label. PPIA preemption only occurs if state tort liability imposes requirements "in addition to" or "different from" the federal requirements. 21 U.S.C. § 467e. A state requirement is *additional to* or *different from* federal requirements if it is not "identical" or "parallel" to such federal requirements. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008) (interpreting an identically worded statute); *Nat'l Broiler Council*, 44 F.3d at 745. Here, Pilgrim's asserts, and the Court agrees, that Innovative's claims impose such requirements. The FSIS's labeling decisions are considered "federal requirements" under the PPIA. *Cohen*, 16 F.4th at 1288.[8] Hence, any misrepresentation claim based on an FSIS-approved label (here, the "584 Chicken" label) imposes an "additional or different" requirement and is therefore preempted. *Id.*

Accordingly, Pilgrim's motion for summary judgment (Dkt. No. 162) on this issue is GRANTED in part and DENIED in part consistent with the reasoning above.

### C.    Express Warranty[9]

Innovative and Pilgrim's cross-move for summary judgment on Innovative's breach of

---

[7] The PPIA's express preemption also applies to statements made on the label. *See Cohen*, 16 F.4th at 1290 (determining that a plaintiff's misrepresentation claim based on the phrase "Made with 100% Natural White Meat Chicken" on the defendant's website was preempted because the FSIS approved the phrase for the product's label) (citing *Taylor AG Industries v. Pure-Gro*, 54 F.3d 555, 561 (9th Cir. 1995)).

[8] Indeed, when the FSIS approves a label, it thereby deems the label compliant with the PPIA. *Id.*

[9] The Court shall construe Innovative's claim as arising out of contract law because it cites to the UCC in its motion and Pilgrim's does not challenge this choice of law.

1    express warranty claim against Pilgrim's.[10] (Dkt. Nos. 153, 162.) Innovative argues that

2    Pilgrim's breached its express warranty when the chicken included "excessive bones and other

3    parts of chicken," despite Pilgrim's representations that it was "a boneless breast trim product."

4    (Dkt. No. 153 at 25.) Pilgrim's counters that none of the materials it provided before the time of

5    sale indicated the product was boneless. (Dkt. No. 162 at 15.) Resolution of this issue thus turns

6    on whether an express warranty existed at the time of sale.

7         When a seller makes an affirmation of fact to a buyer, this creates an express warranty

8    that the good will conform to this affirmation. RCW § 62A.2-313. While generally privity is

9    required to maintain an action for breach of warranty, this requirement is relaxed when the seller

10   makes an express warranty to the buyer. *Thongchoom v. Graco Children's Products*, 71 P.3d

11   214, 219 (Wash. Ct. App. 2003). But to recover, a plaintiff must show that it was aware of the

12   seller's representation. *Baughn v. Honda Motor Co.*, 727 P.2d 655, 669 (Wash. 1986).

13        Here, it is uncontroverted that, when selling "chicken 584," Pilgrim's included a product

14   fact sheet identifying it as consisting of "large breast trim." (Dkt. No. 163-8 at 2–4.)[11] This is

15   sufficient to establish that Pilgrim's made an affirmation regarding "chicken 584," which

16   Innovative was aware of when it received the product with the label. RCW § 62A.2-313.

17   However, the parties offer conflicting evidence with respect to whether the product that

18   Innovative received fairly constitutes "breast trim." While some evidence cited suggests that

19   "breast trim" is understood to be boneless, other evidence suggests that breast trim may include

20   bones.[12] Ultimately, a reasonable jury could conclude one way or the other. Because a genuine

21   ────────────────

22   [10] Houlihan joins Innovative in its motion for summary judgment against Pilgrim's on its breach
     of express warranty and negligent misrepresentation claims. (*See* Dkt. No. 176.

23   [11] In addition to passing on Pilgrim's' product fact sheet, Houlihan attached a picture of a label
24   when re-selling "chicken 584" to Innovative. (Dkt. No. 163-8 at 2.) That picture was sent by e-
     mail and, therefore, fails to meet the statutory definition of a label. *See* 21 U.S.C. § 453(s).
     Accordingly, the Court considers it to have no preemptive effect.

25   [12] For example, a Pilgrim's employee stated in a deposition that breast trim means
26   boneless/skinless. (Dkt. No. 154-7 at 15.) However, an e-mail from the USDA indicates that

issue of material fact exists as to whether the chicken received by Plaintiff can reasonably be referred to as "breast trim," summary judgment is precluded.

Accordingly, the Court DENIES each party's summary judgment motions (Dkt. Nos. 153, 162) as it relates to Plaintiff's express warranty claim.[13]

### D.    Negligent Misrepresentation

Innovative and Pilgrim's cross-move for summary judgment on Innovative's negligent misrepresentation claim against Pilgrim's. (*See* Dkt. Nos. 153, 162.)[14] Specifically, Pilgrim's challenges the sufficiency of Innovative's evidence with respect to each element of this claim. (Dkt. No. 162 at 12.)

To succeed on a claim of negligent misrepresentation, a plaintiff must prove (1) that the defendant supplied false information to guide others in a business transaction, (2) that the defendant knew or should have known this information was supplied to guide the plaintiff, (3) that the defendant negligently communicated the information, (4) that the plaintiff relied on this information, (5) that the plaintiff's reliance on this information was reasonable, and (6) that this information proximately caused the plaintiff's damages. *Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2007).

At the outset, the Court finds that Innovative fails to establish the first prong of its *prima facie* case, specifically, that Pilgrim's supplied false information. As the Court noted above, *see supra* Part II.C, a genuine issue of material fact exists as to whether the chicken received could

---

there is no "standard identity for Breast pieces that would indicate it should be boneless." (Dkt. No. 163-10 at 2.)

[13] Houlihan's cross-motion for summary judgment against Pilgrim's on its express warranty claim fails for the same reasons. [14] Houlihan joins Innovative in its motion for summary judgment against Innovative on its negligent misrepresentation claim. (*See generally* Dkt. No. 176.)

[14] Houlihan joins Innovative in its motion for summary judgment against Innovative on its negligent misrepresentation claim. (*See generally* Dkt. No. 176.)

reasonably be referred to as "breast trim." Nonetheless, the Court may still consider whether genuine issues of fact exist for the remaining elements. *See Spirit Master Funding II, LLC v. Herbst*, 2014 WL 4635590 (D. Nev. 2014) (a court may grant summary judgment on specific elements of a claim).

The Court turns to the second prong: whether Pilgrim's knew or should have known the supplied information would guide Innovative. *Kirner*, 172 P.3d at 704. It is undisputed that Pilgrim's supplied a "Product Fact Sheet" referencing "584 Chicken" and describing the product as "large breast trim." (*See* Dkt. No. 163-8 at 2–4.) Furthermore, Innovative offers testimony from Pilgrim's' Senior Director of Quality Assurance that the "Product Fact Sheet" had the potential to be passed down the supply chain to a customer. (Dkt. No. 154-5 at 6–7.) On these facts, a reasonable jury could conclude that Pilgrim's should have known that the information it supplied would guide Innovative in its business.

Pilgrim's resists this conclusion by arguing that it "did not supply Innovative directly with any information." (Dkt. No. 162 at 13.) However, "it is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied." *Haberman v. Washington Public Power Supply System*, 744 P.2d 1032, 1068 (Wash. 1987). Rather, it is enough "that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons, or group." *Id*. In other words, it is sufficient that Pilgrim's supplied the information to a chicken distributor knowing it had the potential for repetition, and that Innovative, as a result, received that information. *Id*. Accordingly, the Court finds that Innovative has offered sufficient unrebutted evidence at the summary judgment stage to support its burden with respect to the second prong of its negligent misrepresentation claim.

The Court now turns to the third prong: whether Pilgrim's negligently communicated the information to Innovative. In arguing for summary judgment, Innovative first offers undisputed evidence that, when selling the "584 Chicken," Pilgrim's supplied a "Product Fact Sheet"

containing a description of the product as consisting of "large breast trim." (Dkt. No. 163-8 at 4.) Second, Innovative offers the testimony of Pilgrim's' senior employees affirming that "breast trim" does, in fact, mean boneless chicken. (*See* Dkt. Nos. 154-7 at 16, 154-9 at 4, 154-10 at 4–6.) Third, Innovative provides uncontroverted evidence that Pilgrim's knew that the "584 Chicken" it was selling contained bones. (Dkt. No. 154-7 at 32–34) (deposition testimony from Santiago Tinoco conceding that the "reality is, we all know that code 584 always comes up with lots of bones and skin"). By contrast, Pilgrim's has provided no evidence in response. (*See* Dkt. No. 162.) Accordingly, the Court finds that Innovative has satisfied its burden with respect to the third prong of its negligent misrepresentation claim.

The Court now turns to the fourth prong: whether Innovative relied on Pilgrim's information. Plaintiff offers two main forms of evidence: (a) a supply agreement between it and Houlihan in which Pilgrim's' "Product Fact Sheet" is appended, stating that the product consists of "large breast trim" (Dkt. No. 163-8 at 4.); and (b) deposition testimony from Innovative's president that he relied on the "Product Fact Sheet" to "look at the defect levels on the chicken and kind of understand . . . what we're buying . . . [as] part of our product approval program." (Dkt. No. 154-1 at 3–4.) By contrast, Pilgrim's fails to provide the Court with evidence in rebuttal. (*See* Dkt. No. 184 at 17–20.) Accordingly, the Court finds that Innovative has satisfied its burden with respect to the fourth prong of its negligent misrepresentation claim.

The Court now turns to the fifth prong: whether Innovative's reliance on the information provided to it was reasonable. Whether a party justifiably relied upon a negligent misrepresentation is generally an issue of fact for the jury. *ESCA Corp. v. KPMG Peat Marwick*, 959 P.2d 651, 655 (Wash. 1998). But where the court finds that no rational person could find the plaintiff reasonably relied on the defendant's representation, the trial court can decide that question as a matter of law. *Hawkins v. Empres Healthcare Mgmt., LLC*, 371 P.3d 84, 92 (Wash. 2016). Here, reasonable minds could conclude that Innovative reasonably relied on the information provided to it. As such, summary judgment is inappropriate.

The Court now turns to the final prong: whether Pilgrim's' representation proximately caused Innovative's damages. Proximate cause is generally a question for the trier of fact unless reasonable minds could not differ. *Hertog, ex rel. S.A.H. v. City of Seattle*, 979 P.2d 400, 406 (Wash. 1999). While it is certainly likely that Pilgrim's' fact sheet was the proximate cause of Plaintiff's injuries, because reasonable minds could differ, the Court is precluded from granting summary judgment. *See Seattle Flight Serv., Inc. v. City of Auburn*, 604 P.2d 975, 978 (Wash. Ct. App. 1979) ("The question of proximate cause is typically for the trier of fact unless the evidence is undisputed, the inferences are plain, and not subject to reasonable doubt.").

To summarize, the Court GRANTS Plaintiff's motion for summary judgment (Dkt. No. 153), but only with respect to the second, third, and fourth prongs of its negligent misrepresentation claim. In contrast, the first, fifth, and sixth prongs are for the jury to decide. And because the *prima facie* analysis applies with equal force to Houlihan's motion joining Innovative's negligent misrepresentation claim (Dkt. No. 176), the Court GRANTS in part Houlihan's motion (Dkt. No. 176) consistent with the Court's reasoning above.

### E.    Implied Warranty Claims Against Pilgrim's

Next, Pilgrim's moves for summary judgment on Innovative's breach of implied warranty claim. (*See generally* Dkt. Nos. 162, 174, 192.) Innovative argues that privity of contract is not required to recover on its implied warranty claim because it was an intended third-party beneficiary of Pilgrim's' implied warranty. (Dkt. No. 174 at 19.) Pilgrim's argues that Innovative was not an intended third-party beneficiary and, even if it were, privity is nevertheless required. (Dkt. No. 162, 174, 192.)

While the privity requirement is relaxed for express representations, privity is still required for implied representations. *Baughn v. Honda Motor Co.*, 727 P.2d 655, 669 (Wash. 1986). However, when a non-privity plaintiff is an intended third-party beneficiary of an implied warranty, they may still be allowed to recover. *Tex Enterprises, Inc. v. Brockway Standard, Inc.*, 66 P.3d 625, 628 (Wash. 2003). The Court looks at the sum of interactions between the parties to

1   determine whether the ultimate buyer was a third-party beneficiary of the underlying warranty

2   between the seller and the intermediary buyer. *Touchet Valley Grain Growers, Inc. v. Opp &*

3   *Seibold General Const., Inc.*, 831 P.2d 724, 730 (Wash. 1992).

4          In *Kadiak Fisheries Co. v. Murphy Diesel Co.*, for example, an engine manufacturer sold

5   a motor to a fishing company ("Kadiak") through a supply company. 422 P.2d 496, 498 (Wash.

6   1967). There, the manufacturer knew the "identity, the purpose, and requirements" of the end-

7   buyer, Kadiak. *Id.* at 503. Specifically, the motor was engineered and constructed to meet certain

8   specifications bargained for by Kadiak; the motor was shipped directly to Kadiak; and the

9   manufacturer's employees visited Kadiak numerous times during the installation of the motor.

10  *Id.* Based on these interactions, that court found that the fishing company was a third-party

11  beneficiary of the implied warranty made by the manufacturer.

12         Here, Innovative seeks to meet its Rule 56(e) burden to establish that it is a third-party

13  beneficiary through one piece of evidence: the Rule 30(b)(6) deposition of Pilgrim's corporate

14  representative, Mike Henry. There, Mr. Henry describes Pilgrim's prior business dealings with

15  Innovative and Pilgrim's general understanding of the products Innovative was making. (*See*

16  Dkt. No. 178-31 at 4–6.) Like in *Kadiak*, the manufacturer here knew the identity, purpose, and

17  requirements of the end-buyer. Indeed, Innovative indicates that Pilgrim's had a long-standing

18  understanding of the types of goods Innovative was selling and, crucially, their intended purpose.

19         Accordingly, the court DENIES Defendant Pilgrim's motion for summary judgment

20  (Dkt. No. 162) on Plaintiff's breach of implied warranty claim.

21  **F.     Consumer Protection Act Claim Against Pilgrim's**

22         Pilgrim's also moves for summary judgment on Innovative's Consumer Protection Act

23  ("CPA") claim. (*See generally* Dkt. Nos. 162, 174, 192.) To prevail on a private CPA action, a

24  plaintiff must establish (1) an unfair or deceptive act or practice, (2) that occurred in trade or

25  commerce, (3) that affected the public interest, (4) damages, and (5) causation. *Hangman Ridge*

26  *Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986). The Court

understands Pilgrim's motion as challenging the sufficiency of Innovative's evidence with respect to the first and third elements, (*see* Dkt. No. 192 at 10–11), and thus considers whether Innovative can satisfy its burden as to these elements.

With respect to the first prong, Pilgrim's argues that there was no unfair or deceptive practice, reciting the now familiar argument that its representations were accurate. (Dkt. Nos. 162, 174, 192.) Given that a genuine issue of material fact exists as to whether the term "breast trim" can be construed to include "584 chicken," *see supra* n.12, the first element regarding the existence of an unfair or deceptive act is an issue for a trier of fact to decide.

With respect to the third prong, Innovative offers three pieces of evidence tending to show that Pilgrim's' acts had a public interest impact. First, it offers the testimonial evidence of several of Pilgrim's' employees, including the senior director of quality assurance, admitting that "there's been an issue with excessive bones in 584 chicken out of the Lufkin plant for a couple of years." (Dkt. No. 154-5 at 16.) Second, Innovative offers customer e-mails complaining of excessive bones in "584 Chicken."[15] Third, it offers Pilgrim's' employees' internal memo noting that an end-user who uses "584 Chicken" to make nuggets for school children is "having to clean it [584 Chicken] real good before they use it." (Dkt. No. 154-21 at 3.) Taken together, this indicates that the defects associated with "584 Chicken" affected the public writ large. Accordingly, the Court finds that Plaintiff Innovative has met its burden as to the third element of its CPA claim.

Accordingly, the Court DENIES Pilgrim's' motion for summary judgment (Dkt. No. 162) and GRANTS in part Innovative's motion (Dkt. No. 154), at least as it relates to the first and third prongs of Plaintiff's CPA claim.

### G.    Negligence Claim Against Pilgrim's

---

[15] The evidence provided is too lengthy to recite in detail, but concerning to this Court is an email in which a customer insists on returning "584 Chicken" to Pilgrim because "no products containing bones are allowed in the prison out of concern the inmates can make weapons out of them." (Dkt. No. 154-27 at 5.)

1    Next, Pilgrim's moves for summary judgment on Innovative's negligence claim, arguing

2    for certain affirmative defenses as a matter of law. (Dkt. No. 162 at 2.)

3        1.   Assumption of Risk

4    Pilgrim's first argues that Innovative assumed the risk of receiving a defective product

5    when it used "584 Chicken" domestically despite its "export only" label—which according to

6    Pilgrim's, indicates that the chicken could be nonconforming. (Dkt. No. 162 at 17–19.)

7    For a plaintiff to assume a risk, they must have had (1) a full subjective understanding

8    (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk.

9    *Egan v. Cauble*, 966 P.2d 362*, 365 (Wash. Ct. App. 1998). One who is unaware of the hazard

10   does not assume the risk. *Mikelsen v. Air & Liquid Sys. Corp.*, 2018 WL 4899305, slip op. at 2

11   (W.D. Wash. 2018).

12   Here, Pilgrim's fails to demonstrate that the "export only" label was tantamount to a

13   warning for the potential presence of bones, which Innovative was subjectively aware of.

14   Pilgrim's cites to USDA FSIS Directive 9000.1, but that document makes no mention of

15   allowing bones in the product at issue. (*See* Dkt. No. 163-5 at 2–6.) Conversely, federal

16   regulations suggest the opposite—that a poultry product initially intended for sale in foreign

17   commerce but subsequently sold or offered for sale in domestic commerce must still comply

18   with domestic requirements. *See* 9 CFR § 317.7. Because Pilgrim's fails to demonstrate that the

19   "export only" label communicated a specific risk and that Innovative understood it as such,

20   summary judgment on Pilgrim's assumption of risk defense is DENIED.

21       2.   Superseding Cause

22   Pilgrim's next argues that Innovative's decision to ignore the "export only" label and its

23   failure to adequately inspect the chicken were superseding causes. (Dkt. No. 162 at 19.)

24   A superseding cause breaks the chain of causation only if the intervening event is so

25   unexpected that the defendant could not have reasonably foreseen it. *Pacheco v. United States*,

26   515 P.3d 510, 523 (Wash. 2022). A seller may reasonably assume that the user of its product

1 will "read and heed" the warnings the seller has placed on the product. *See Beard v. Mighty Lift,*

2 *Inc.*, 224 F. Supp. 3d 1131, 1138 (W.D. Wash. 2016) (quoting Restatement (Second) of Torts

3 § 402A). Because a plaintiff's defiance of a warning is not reasonably foreseeable, its disregard

4 of the warning represents a superseding cause that breaks the chain of proximate causation to

5 the defendant. *Id.* at 1138–39. However, whether an intervening act breaks the chain of

6 causation is ordinarily a question for the trier of fact. *Pacheco*, 515 P.3d at 523.

7       Here, Pilgrim's fails to demonstrate that the "export only" label served as a warning akin

8 to those in products liability cases. As such, Pilgrim's was not in a position where it could

9 reasonably assume that a user of its products would "read and heed" the "export only" label. *See*

10 *Beard*, 224 F. Supp. 3d at 1138. As previously noted, the USDA FSIS Directive 9000.1 is not a

11 warning for the presence of bones. *See supra* Part II.G.1. And poultry products intended for

12 foreign commerce but sold in domestic markets must comply with domestic requirements. 9

13 CFR § 317.7.

14       In the alternative, Pilgrim's argues that Innovative's failure to adequately inspect its

15 chicken was a superseding cause. (Dkt. No. 162.) But where the underlying product is defective,

16 and the plaintiff fails to inspect it, the question of whether that failure constitutes a superseding

17 cause is for the fact finder. *See Olympic Air, Inc. v. Helicopter Tech. Co.*, 2022 WL 6162104,

18 slip op. at 7 (W.D. Wash. 2022) (determining that plaintiff's failure to inspect a defective

19 helicopter blade prior to a crash was a question of fact regarding superseding cause). Thus, the

20 adequacy of Innovative's inspection is not an issue appropriate for summary judgment.

21       Accordingly, summary judgment on Pilgrim's superseding cause defense is DENIED.

22           3.  <u>Substantial Modification</u>

23       Finally, Pilgrim's argues for the application of a substantial modification defense. (Dkt.

24 No. 162.) When a product undergoes substantial modification and that change is the cause of the

25 injury, the original manufacturer is absolved of liability. *Padron v. Goodyear Tire & Rubber Co.*,

26 662 P.2d 67, 69 (Wash. Ct. App. 1983). Pilgrim's suggests that Innovative's failure to inspect the

chicken whatsoever caused the harm. (Dkt. No. 162 at 23–24.) However, Pilgrim's theory of liability does not fall within the ambit of the substantial modification defense doctrine and is duplicative of its superseding cause argument. Summary judgment is therefore DENIED on this defense.

### H.    Innovative's Breach of Contract Claims Against Houlihan

Innovative also moves for summary judgment on its breach of contract claim against Houlihan. (*See generally* Dkt. Nos. 153, 176.) Because Innovative carries the burden at trial, the Court must first consider whether it has offered sufficient evidence to make out its *prima facie* case on all three claims.

A breach of contract claim requires (1) the existence of a valid contract between the parties, (2) defendant's breach, and (3) damages. *Glob. Cure Med. LLC v. Alfa Pharma LLC*, 2020 WL 6075920, slip op. at 5 (W.D. Wash. 2020). Exchanging purchase orders and invoices can establish a valid contract, *see Tacoma Fixture Co. v. Rudd Co.*, 174 P.3d 721, 724 (Wash. Ct. App. 2008), as does party conduct recognizing the existence of a contract. RCW 62A.2-204. And, of course, delivering nonconforming goods generally constitutes a breach of contract. *Kysar v. Lambert*, 887 P.2d 431, 437 (Wash. Ct. App. 1995) (citing RCW 62A.2-301).

Here, it is undisputed that Innovative and Houlihan exchanged purchase orders and invoices for boneless chicken. (*See* Dkt. No. 154-36 at 2–13.) It is also undisputed that their conduct reflected a contract for the purchase of "B/S breast trim" which was understood by Houlihan and Innovative to mean a "boneless/skinless product." (Dkt. No. 154-6 at 4–5.) This is sufficient to establish the existence of a valid contract.

Having established the existence of a valid contract, Innovative must next show that Houlihan breached that contract. Innovative offers two pieces of evidence. First, it offers an e-mail from Frank Sorba, Innovative's President, to senior employees at Houlihan in which he takes issue with Houlihan's non-conforming shipments of "584 Chicken." (Dkt. No. 154-47 at 2.) Second, in that same e-mail, Mr. Sorba appends photos of the bones found in Houlihan's

1  shipment. (*Id.* at 3–5.) Houlihan, on the other hand, offers no evidence establishing a dispute

2  about a material fact relevant to the contractual claims made. Having failed to do so, the Court is

3  compelled to grant Innovative's motion.

4       Accordingly, the Court GRANTS Innovative's motion for summary judgment (Dkt. No.

5  153) with respect to its breach of contract claim against Houlihan.

6  **I.       Innovative's Breach of Express Warranty Claim Against Houlihan**

7       Innovative also moves for summary judgment on its breach of express warranty claim

8  against Houlihan. (*See generally* Dkt. Nos. 153, 176.)

9       An express warranty is any affirmation of fact, promise, or description by a seller relating

10  to or describing a good—but only when such representation forms the "basis of the bargain."

11  RCW 62A.2-313(1); *see Mensonides Dairy, LLC v. Agri-King Nutrition, Inc.*, 2018 WL

12  3603054, slip op. at 2 (E.D. Wash. 2018) (determining that defendant created an express

13  warranty because defendant, orally and in writing, represented that it would improve plaintiff's

14  corn silage in specific ways).

15       To support its burden at summary judgment, Innovative offers evidence indicating:

16  (a) that Houlihan assured Innovative both orally and in writing that the chicken would be

17  boneless, (Dkt. Nos. 154-6 at 22, 154-37, 154-39); (b) that this representation formed the basis of

18  the bargain which garnered Innovative's assent, (Dkt. Nos. 154-6 at 22, 27, 154-1 at 4); and

19  (c) that the chicken it received was not boneless as had been contracted for, (Dkt. No. 154-1 at

20  11–12). Houlihan was obligated to come forward with evidence establishing a dispute about a

21  material fact but having failed to do so, the Court GRANTS Innovative's motion for summary

22  judgment (Dkt. No. 153) with respect to its breach of express warranty claim against Houlihan.

23  **J.       Innovative's Breach of Implied Warranty Claim Against Houlihan**

24       Innovative asserts two breaches of implied warranties: merchantability and fitness for a

25  particular purpose. (Dkt. No. 153.) The Court considers each in turn.

26            1.   Implied Warranty of Merchantability

1    A breach of an implied warranty of merchantability claim requires the buyer prove that:

2    (1) the seller is a merchant; (2) the goods were not merchantable; (3) damages were proximately

3    caused by the defective nature of the good; and (4) the seller was given notice of the injury.

4    *Superwood Co. Ltd. v. Slam Brands, Inc.*, 2013 WL 6008489, slip op. at 3 (W.D. Wash. 2013)

5    (citing RCW 62A.2-314). Washington law defines "merchantable" to signify "goods fit for the

6    ordinary purposes for which such goods are used." RCW 62A.2-314.

7    The Court is satisfied that Plaintiff has met its burden at summary judgment. First, it is

8    undisputed that Houlihan is a merchant as defined by statute. *See* RCW 62A.2-104. Second, it is

9    undisputed that the "584 Chicken" that Innovative received included bones, thereby rendering

10   the goods not merchantable. (Dkt. Nos. 176 at 5, 153 at 5.) Third, given that the evidence

11   pertaining to proximate cause is undisputed, namely that Houlihan did, in fact, send Innovative a

12   nonconforming product, (Dkt. No. 176 at 5) and given that no other reasonable inferences may

13   be drawn from this fact, the Court finds that Innovative has satisfied its burden as to its breach of

14   implied warranty claim. *See Seattle Flight Serv*, 604 P.2d at 978 ("Unless the evidence is

15   undisputed and the inferences are plain and not subject to reasonable doubt, the question of

16   proximate cause is for the trier of fact."); *see also Dewar v. Smith*, 342 P.3d 328, 337 (Wash. Ct.

17   App. 2015) (determining proximate cause as a matter of law where the facts are undisputed and

18   "reasonable minds could not differ"). Lastly, it is undisputed that Houlihan was given notice of

19   the injuries suffered. (Dkt. No. 154-47 at 2.) Houlihan offers no evidence establishing a genuine

20   issue of material fact.

21   Accordingly, the Court GRANTS Innovative's motion for summary judgment (Dkt. No.

22   153) with respect to its breach of implied warranty of merchantability claim.

23   2. Implied Warranty of Fitness for a Particular Purpose

24   To demonstrate a breach of an implied warranty of fitness for a particular purpose, a

25   buyer must prove that: (1) the seller had reason to know of the buyer's particular purpose; (2) the

26   seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish

appropriate goods; and (3) the buyer in fact relied on the seller's skill or judgment. *Superwood Co.*, 2013 WL 6008489, slip op. at 15.

  To support its motion, Innovative first offers the deposition testimony of Travis Griffin, partner of sales at Houlihan, stating that he was aware that Innovative required boneless chicken in order to produce the Chile Lime Chicken burgers for Trader Joe's. (Dkt. No. 154-6 at 26–27.) This plainly satisfies Innovative's burden at summary judgment with respect to the first element of its implied warranty claim requiring that the seller have reason to know of the buyer's particular purpose. That purpose was to create boneless chicken burgers for Trader Joe's. (*Id.* at 27.) Innovative next offers testimonial evidence establishing that it has been conducting business with Houlihan for the last ten years. (*Id.* at 25.) Innovative argues, and the Court agrees, that this suggests Houlihan had reason to know that Innovative would rely on its judgment in furnishing the product at-issue here.

  Finally, Innovative offers the testimony of its President, Frank Sorba, in which he testifies to having relied on the "Product Fact Sheet" to "look at the defect levels on the chicken and kind of understand. . . what we're buying. . . it's part of our product approval program." (Dkt. No. 154-1 at 3–4.) This indicates that Innovative relied on Houlihan's judgment and did so reasonably in view of the parties' long-standing business relationship.

  Rather than cite to countervailing evidence on the contractual and warranty claims, (*see* Dkt. No. 176 at 9), Houlihan seeks to avoid summary judgment through an affirmative defense: acceptance. The Court discusses this defense next.

   3. Houlihan's "Acceptance" Defense[16]

  Houlihan argues that Innovative is barred from recovery because, despite its inspection process, it failed to notify Houlihan of the nonconformity within a reasonable time. (Dkt. No.

---

[16] Houlihan raised "acceptance" as an affirmative defense, but the parties refer to it by different names in their briefing. For simplicity, the Court will refer to the defense as the "acceptance" defense.

163.) In response, Innovative argues that, because its inspection process was not designed to detect and triage bones, there was no delay when it informed Houlihan two days after Trader Joe's notified it of the defect.[17] Indeed, recovery is barred when the buyer accepts non-conforming goods and fails to notify the seller of any breach within a reasonable time. *See* RCW 62A.2-607(3). A reasonable time is measured from when the buyer discovered or should have discovered the breach and when that buyer provided notification, *id.,* and the reasonableness of a delay depends on the nature, purpose, and circumstances of the action. RCW 62A.1-205. As a result, it is typically a mixed question of law and fact. *Jarstad v. Tacoma Outdoor Recreation, Inc.*, 519 P.2d 278, 283 (Wash. Ct. App. 1974).

At the outset, the Court finds that Houlihan has failed to set forth sufficient evidence to support its defense. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (requiring the nonmoving party to present probative evidence supporting its acceptance defense at summary judgment). Instead, Houlihan points to the existence of an inspection process in Innovative's processing plant. (Dkt. No. 163-4 at 4–7.) But the mere existence of an inspection process is not sufficient to establish a factual dispute with respect to whether Plaintiff should have discovered the nonconformity sooner. (*See generally* Dkt. No. 176 at 9.) And even if reasonably minded jurors might draw such an inference, Houlihan proffered no evidence suggesting that the 54-day delay itself was unreasonable. *See DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.*, 2016 WL 631574, slip op. at 25 (W.D. Wash. 2016) (noting that assertions of facts, without citations to evidence in the record, do not create issues of fact that would alter the court's decision to grant partial summary judgment); *see also Magic Link Garment Ltd. v. ThirdLove, Inc.*, 445 F. Supp. 3d 346, 356

---

[17] Without any citation to the record, Houlihan asserts that there was a three-month delay between delivery of chicken 584 and Innovative's notification. (Dkt. No. 176 at 7.) In its reply brief, Innovative provides evidence showing that the interim between delivery and notification was 54 days. (Dkt. No. 193.)

(N.D. Cal. 2020) (granting plaintiff's summary judgment motion because defendant failed to cite any evidence supporting its affirmative defense).

While the issue of timeliness is, on occasion, a question of fact, *see Elec. Mirror, LLC v. Avalon Glass & Mirror Co.*, 2018 WL 4488604, slip op. at 4 (W.D. Wash. 2018), in such cases, the defendant typically raises the issue on its own motion for summary judgment, and not in response to a plaintiff's summary judgment motion. Furthermore, in more procedurally similar cases, the defendant cited specific reasons for why the delay was unreasonable. *See Glob. Cure Med.*, 2020 WL 6075920, slip op. at 8 (noting that the parties raised several factual disputes that could inform whether the delay may have been unreasonable). In the instant case however, Houlihan has plainly failed to identify any evidence supporting an inference that the delay was unreasonable.

Accordingly, summary judgment on Houlihan's acceptance defense is DENIED and Innovative's motion for summary judgment is GRANTED with respect to its implied warranty of fitness for a particular purpose claim (Dkt. No. 153.)

## III.        CONCLUSION

For the foregoing reasons, the parties' cross-motions for summary judgment (Dkt. Nos. 153, 162, 176) are GRANTED in part and DENIED in part, and the Court ORDERS as follows:

1. The Court DENIES all motions for summary judgment on Innovative's express warranty claim;

2. Innovative's motion for summary judgment (Dkt. No. 153) on its negligent misrepresentation claim is GRANTED in part, specifically, on the limited basis of the second, third, and fourth prongs;

3. Pilgrim's motion for summary judgment (Dkt. No. 162) on Innovative's breach of implied warranty claim is DENIED;

4. Pilgrim's motion for summary judgment (*Id.*) on Innovative's CPA claim is DENIED;

5.  Innovative's motion for summary judgment (Dkt. No. 153) on its CPA claim is GRANTED, at least as it relates to the first and third prongs;

6.  Summary judgment on Pilgrim's assumption of risk, superseding cause, and substantial modification defenses is DENIED;

7.  Summary judgment on Houlihan's acceptance defense is DENIED;

8.  Innovative's motion for summary judgment (Dkt. No. 153) on its breach of contract claim against Houlihan is GRANTED;

9.  Innovative's motion for summary judgment (*Id.*) on its breach of express warranty claim against Houlihan is GRANTED;

10. Innovative's motion for summary judgment (*Id.*) with respect to its breach of implied warranty of merchantability claim is GRANTED;

11. Innovative's motion for summary judgment (*Id.*) with respect to its breach of implied warranty of fitness for a particular purpose is GRANTED.

DATED this 29th day of January 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE