THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INNOVATIVE SOLUTIONS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> HOULIHAN TRADING CO., INC, *et al.*, <br><br> Defendants. | CASE NO. C22-0296-JCC <br><br> ORDER |

This matter comes before the Court on the parties' joint motions *in limine* (Dkt. No. 256) and joint status report ("JSR") (Dkt. No. 279). As noted in the JSR, and discussed at a prior status conference, (*see* Dkt. No. 278), the parties seek advance rulings on four motions *in limine*: Innovative Solutions International, Inc.'s ("Innovative") first and third motions, as well as Pilgrim's Pride Corporation's ("Pilgrim's") first and second motions. (*See* Dkt. No. 279 at 2.) The Court further addresses Innovative's second motion *in limine*, given the direct relation to Innovative's first motion *in limine*.

I.   BACKGROUND

This case arises out of a supply chain dispute associated with chicken "breast trim." (*See generally* Dkt. No. 83.) The Court has stated the relevant facts of this case in its prior summary judgment order, (*see* Dkt. No. 247), and will not restate them here.[1] Following summary

---

[1] Moreover, for purposes of this Order, the product at issue is hereinafter referred to as the "Product" or "584 Chicken."

judgment, claims of negligent misrepresentation, negligence, breach of express and implied warranty, and violation of Washington's Consumer Protection Act ("CPA") remain. (*See* Dkt. Nos. 247, 253.)

## II. DISCUSSION

### A. Innovative's Motions *in Limine* Nos. 1 and 2—Federal Labeling Requirements

#### 1. Motion No. 1: Evidence/Argument Relating to Preemption

Innovative seeks to exclude all references by Defendants to the Poultry Products Inspection Act's ("PPIA") preemption of state law misrepresentation claims. (Dkt. No. 256 at 3.) Innovative contends this is a legal issue and thus references to preemption would confuse and mislead the jury—particularly since the Court already "determined that 'any misrepresentation claim based on an FSIS-approved label . . . is preempted.'"[2] (Dkt. No. 256 at 3) (quoting Dkt. No. 247 at 5). Defendant Houlihan Trading Company, Inc. ("Houlihan") joins in the motion. (*See id.*) Pilgrim's also does not oppose "to the extent [Innovative] seeks to exclude reference to the pre-decided legal issue of preemption." (*Id.* n. 1.) However, Pilgrim's *does* oppose to the extent Innovative seeks to limit "discussion, evidence, or testimony of the label itself and implications associated therewith." (*Id.*) The Court agrees with Innovative that any references to preemption would confuse and mislead the jury, particularly since it is a legal issue that has already been adjudicated. (*See* Dkt. No. 247 at 5.) The Court therefore GRANTS Innovative's first motion *in limine*.

#### 2. Motion No. 2: References to a USDA Mislabeling Determination

Innovative next seeks to exclude all references to the USDA's/FSIS's determination that the FSIS pre-approved label affixed to the Product was *not* a *mis*label. (Dkt. No. 256 at 4.) Innovative posits that such evidence (1) is irrelevant, given the Court's preemption ruling; and

---

[2] "FSIS" being the U.S. Department of Agriculture's ("USDA") Food Safety Inspection Service. *See* Dkt. No. 247 at 4.

(2) would confuse and mislead the jury, given that the label cannot form the basis of any misrepresentation claim.[3] (*See id*. at 4.) Pilgrim's opposes this motion on the grounds that "[r]elevancy is a low bar" and that the label affixed to the Product "meets this low threshold." (*Id*. at 4–5.) Again, the Court agrees with Innovative.

The USDA's labeling determination is wholly irrelevant given the Court's prior ruling that the FSIS pre-approved label may not constitute the basis of any misrepresentation claim (and, more specifically, of any mislabeling claim). (*See* Dkt. No. 247 at 3–5). Therefore, any evidence pertaining to USDA assessments of the label bear no "consequence in determining the action." Fed R. Evid. 401.[4] Indeed, if the PPIA preempts Innovative's mislabeling claims to the extent they are premised on the FSIS pre-approved label, then any evidence regarding subsequent USDA determinations as to the *same* FSIS pre-approved label are preempted and therefore irrelevant because they cannot be used to properly prove—or disprove—any misrepresentation claims in this case. Put simply, there is no relationship between the USDA's determinations as to the label and Innovative's state law misrepresentation claims.

Pilgrim's adamantly argues that the FSIS pre-approved label is "relevant for a variety of reasons" and "it would be highly prejudicial to prevent the jury from seeing that the actual Pilgrim's label does not describe the product as boneless." (Dkt. No. 256 at 5.) But Pilgrim's misconstrues the scope of Innovative's second motion. Innovative does not seek to exclude *all* evidence of the label; rather, it seeks to exclude USDA assessments as to whether the label constitutes a "mislabel" or otherwise maintains any misrepresentations—which, as the Court has already ruled, is federally preempted. Moreover, given these distinct nuances, the Court finds

---

[3] Innovative also argues that such evidence is unfairly prejudicial because the USDA "did not have the information it requested to make the determination" and therefore "never determined that the 584 Chicken was properly labeled." (*Id*. n. 2.) Because, as described below, the Court GRANTS Innovative's motion on other grounds, it declines to entertain this argument.

[4] Evidence is only relevant if it bears relation to "a matter properly provable in the case." *Id*. (Advisory Committee Notes).

that any reference to USDA determinations as they relate to the FSIS pre-approved label would certainly (1) confuse the issues as to what is and is not allegedly misrepresented, and (2) mislead the jury as to what evidence it can and cannot consider. The Court therefore GRANTS Innovative's second motion *in limine*.

### B.   Innovative's Motion *in Limine* No. 3: 'For Export Only' Labeling

Innovative also seeks to exclude "testimony or evidence related to 584 Chicken allegedly being classified as 'for export only.'" (Dkt. No. 256 at 5.) Innovative argues, among other things, that this designation is irrelevant because it is "not 'tantamount to a warning for the potential presence of bones'" and "Pilgrim's employees admit 584 Chicken is the same product whether sold for export or domestic use." (*Id*.) (quoting Dkt. No. 247 at 13, 14). Thus, the designation has "no bearing on the nature of the product Innovative received." (*Id*.)

Houlihan agrees that the "for export only" label does not indicate a different product or warn of the potential for bones, and to suggest otherwise would confuse the jury as to the proximate cause of Plaintiff's damages. (*Id*. at 6.) However, Houlihan asserts that the "for export only" label should be admissible to the very limited circumstances in which the label should have alerted Innovative that it received a product that was different from what was described on the purchase order, which in turn may serve as evidence of contributory negligence. (*Id*. at 6.)

Pilgrim's, in turn, argues that "Innovative seemingly wants this Court to believe that every single one of Pilgrim's employees has indicated the Product is the same whether it is for domestic or export use." (*Id*.) (emphasis in original). Pilgrim's further asserts that it should be permitted to discuss the "for export only" designation because it is relevant to show that Innovative failed to take certain steps before using the product; after all, had Innovative taken such steps, it would have noticed the "for export only" designation and thereby would have been on alert "that it did not receive the product it intended to order." (*Id*. at 7.)

The Court agrees with Defendants. While it previously indicated that the "for export only" language is not "tantamount to a warning for the potential presence of bones," the Court

ORDER
C22-0296-JCC
PAGE - 4

did so in showing that Pilgrim's had not succeeded on its affirmative defenses to negligence at the summary judgment stage. (*See* Dkt. No. 247 at 13–15.) The Court did not mean to imply that the "for export only" designation was entirely irrelevant, though. The designation is squarely relevant to the extent Defendants seek to use it to assert various defenses that were unsuccessful at the summary judgment stage.

Accordingly, the Court DENIES Innovative's third motion *in limine*.

C.     **Pilgrim's Motion *in Limine* No. 1: Evidence Relating to a Specification or Fact Sheet Not Provided to Innovative or Houlihan**

Pilgrim's seeks to exclude any evidence or testimony regarding an internal specification sheet ("spec sheet") and a fact sheet, both of which were never provided to Innovative or Houlihan (in some capacity), but which detail the 584 Chicken's "defect criteria." (Dkt. No. 256 at 14.) Pilgrim's argues that, because Innovative did not receive the fact sheet until after Innovative had already used the 584 Chicken to create its Chile Lime Chicken Burgers, and because Innovative and Houlihan never received the spec sheet, neither Innovative nor Houlihan can argue that they relied on these sheets. (*Id*.) In turn, Innovative asserts that there is no reliance requirement in its CPA or negligence claims. (*Id*. at 15.) Houlihan further argues that the spec sheet and fact sheet are relevant to support a negligence claim "because internal policies and directives can produce evidence of a standard of care." (*Id*. at 16.)

The Court agrees with Innovative and Houlihan—the spec sheet and fact sheet are squarely relevant to support a claim of negligence. Indeed, even if Innovative and Houlihan never laid eyes on them, the sheets "may provide evidence of the standard of care and therefore be evidence of negligence." *Joyce v. State*, 119 P.3d. 825, 834 (Wash. 2005).

The Court DENIES Pilgrim's first motion *in limine*.

**D.  Pilgrim's Motion *in Limine* No. 2: Exclude Testimony or Evidence Regarding International Complaints**

Pilgrim's next seeks to exclude, pursuant to Rule 403, any evidence or testimony regarding international customer complaints that it received about the 584 Chicken. (*See* Dkt. No. 256 at 16–17.) Pilgrim's argues such evidence would be unduly prejudicial and confuse the jury because those customers "are not similarly situated" to Innovative or Houlihan. (*Id*. at 16.) In particular, Pilgrim's emphasizes such complaints came from customers "who knew and expected bones in the Product;" thus, "[t]heir complaints were not that there were bones," (as is the complaint here), but rather that "there were more bones within the Product than expected." (*Id*. at 16–17) (emphasis in original).

Innovative and Houlihan both counter that the international complaints are directly probative of whether Pilgrim's knew it was selling the Product with bones/excessive bones, contrary to its representations that the Product was boneless. (*Id*. at 17–18.) Houlihan further notes that Pilgrim's offers no legal support for "its position that the complaints should be excluded because they come from non-similarly situated customers." (*Id*. at 18.)

Once again, the Court agrees with Innovative and Houlihan. Absent any legal support, the Court fails to see how complaints from purportedly "non-similarly situated customers" would unduly prejudice Pilgrim's. To the contrary, and as Innovative and Houlihan note, the international complaints are directly probative of the issues in this case—they may support the assertion that Pilgrim's knew or should have known of the bones in its Product. As such, the international complaints are not unduly prejudicial, and whatever prejudicial effect the international complaints may have (if any) certainly does not outweigh their probative value.

The Court DENIES Pilgrim's second motion *in limine*.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Innovative's Motions *in Limine* No. 1 and 2, DENIES Innovative's Motion *in Limine* No. 3, and DENIES Pilgrim's Motions *in Limine* No. 1 and 2.

DATED this 13th day of September 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE