THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INNOVATIVE SOLUTIONS INTERNATIONAL, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>HOULIHAN TRADING CO., INC., a Florida corporation; BRIGHTON GROUP, LLC, an Arkansas limited liability company; MARCUS TECHNOLOGIES LLC, a Texas limited liability company; SHUMAKER INTERNATIONAL CORP., a Tennessee corporation; COOK INTERNATIONAL TRADE & BROKERAGE, INC., a Florida corporation; NORTH SOUTH FOODS GRP., INC., a Florida corporation; HENLEY'S WHOLESALE MEATS, INC., an Arkansas corporation; PILGRIM'S PRIDE CORP., a Delaware corporation; and DOES 1–10,<br><br>Defendants. | Case No. 2:22-cv-00296-JCC<br><br>PLAINTIFF INNOVATIVE SOLUTIONS INTERNATIONAL, INC.'S:<br><br>(1) NOTICE OF SETTLEMENT PURSUANT TO RCW 4.22.060(1)<br><br>(2) MOTION FOR ORDER FINDING SETTLEMENT REASONABLE PURSUANT TO RCW 4.22.060(1)<br><br>NOTE ON MOTION CALENDAR: DECEMBER 4, 2024 |

INNOVATIVE'S NOTICE OF SETTLEMENT AND MOTION FOR REASONABLENESS FINDING (2:22-CV-00296-JCC)

## I. INTRODUCTION

Plaintiff Innovative Solutions International, Inc. ("Innovative") and defendant Houlihan Trading Co., Inc. ("Houlihan") respectfully provide the following notice and moves this Court for an order ("Notice and Motion"), pursuant to RCW 4.22.060(1) that the $3,000,000.00 settlement reached between Houlihan and Innovative in this matter is reasonable given the facts and circumstances of this case. RCW 4.22 *et seq.* prescribes that where issues of joint and several liability are implicated certain procedures must be followed. In relevant part, RCW 4.22.060(1) dictates that a settling entity must, prior to entering into a settlement:

> … give *five days' written notice* of such intent to *all other parties and the court*. The court may for good cause authorize a shorter notice period. The notice shall contain a copy of the proposed agreement. A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A determination by the court that the amount to be paid is reasonable must be secured. . . .

RCW 4.22.060(1) (emphasis added). This filing constitutes the necessary notice and provides the justification for the reasonableness. This Notice and Motion is supported by: (i) the Court's January 29, 2024 Order on Summary Judgment (Dkt. No. 247); (ii) the Expert Report of Stephen J. Kessler previously filed under seal (Dkt. No. 211); and (iii) the Declaration of Philip M. Guess ("Guess Dec.") and the attachments to that declaration.

Per the statute, Innovative and Houlihan will execute the settlement no earlier than November 20, 2024. To the extent a reasonableness hearing is necessary, Innovative and Houlihan look forward to participating and presenting any additional information the Court requires.

## II. STATEMENT OF FACTS

This action arises from a supply chain dispute associated with chicken "breast trim." *See generally* January 29, 2024 Order on Summary Judgment, Dkt. No. 247. Namely, the Parties contest whether "breast trim" may contain bone under their supply agreement(s). *Id* at 2. Defendant

1  Pilgrim's Pride Corporation ("Pilgrim's")[1] processed the chicken at issue (referenced as "584 Chicken," per the breast trim's product code), and it indisputably contained bone. *Id*. When selling 584 Chicken, Pilgrim's used a fact sheet describing the product as "breast trim." *Id*. Over time, 584 Chicken passed through numerous intermediaries, including Defendant Houlihan. *Id*. Houlihan, in turn, offered to sell the chicken to Innovative, a food products manufacturer. *Id*. In doing so, Houlihan described it as "B/S" (meaning boneless and skinless) and "breast trim." *Id*. Innovative then purchased the chicken to make its Chile Lime Chicken burgers, which it sold exclusively to Trader Joe's supermarket. *Id*.

When customers later complained about bones in the Chile Lime Chicken burgers, (a) Innovative was compelled to recall the product, and (b) Trader Joe's terminated its business relationship with Innovative. *Id*. In response, Innovative sued Houlihan and Pilgrim's alleging breach of contract (as to Houlihan only[2]), breach of express warranty, breach of implied warranty, negligent misrepresentation, negligence, and Washington's Consumer Protection Act ("CPA") claims. *Id*. at 2-3. Innovative subsequently dismissed its CPA claim against Houlihan. Dkt. No. 167.

### A.  Mediation Attempts by the Parties

The Parties participated in two separate meditations before the Honorable Judge Paris Kallas (ret.) on July 19, 2023, and September 7, 2023. Guess Dec. at ¶ 2. The Parties engaged in good faith at both mediations, but the Parties were far apart in their positions. *Id.* Indeed, Judge Kallas continued to facilitate mediation discussions after both mediations into October 2024, culminating in the settlement with Houlihan for $3,000,000.00. *Id*. at ¶ 3.

---

[1] As referenced in this Motion, Innovative, Houlihan and Pilgrim's are collectively referred to as "the Parties."

[2] Dkt. No. 247 at 3, n.6.

B.   **Innovative's Damages**

Innovative's Damages Expert Steven J. Kessler's most recent damages report calculated Innovative's total loss including forgone interest as $18,517,000. Dkt. No. 211 at 2. Indeed, in denying Pilgrim's Motion to exclude expert Kessler's testimony, this Court has already determined that "Mr. Kessler's expert testimony is based upon sufficient facts and data and that his testimony is the product of principles which have been reliably applied in his evaluation of Plaintiff's damages." Dkt. No. 243 at 7.

Mr. Kessler's damages calculation does not include enhanced damages and attorneys' fees. Innovative argues that its enhanced damages would be $25,000 for every violation of the CPA, for a total of $150,000 based on its receipt of six shipments of 584 Chicken. Guess Dec. at ¶4. Innovative has also incurred approximately $2.7 million in attorneys' fees to date and anticipates significant additional attorneys' fees to take this case through trial. *Id*. at ¶5. Both enhanced damages and attorneys' fees are awardable to Innovative if Innovative prevails on its CPA claim, but only as to Pilgrim's, since Innovative is not pursuing a CPA claim against Houlihan.

C.   **This Court has Determined that Houlihan is Liable to Innovative**

Per the Court's order on summary judgment, Innovative has established liability against Houlihan on the following claims:

   **1.**   Breach of Contract (Dkt. No. 247 at 16);

   **2.**   Breach of Express Warranty (*Id*.);

   **3.**   Breach of Implied Warranty of Merchantability (*Id*. at 17); and

   **4.**   Breach of Implied Warranty of Fitness for a Particular Purpose (*Id*. at 20).

For these claims, the only issue remaining for the jury would be to determine the damage amount to which Innovative is entitled. Each of Innovative's additional claims remains live in the case, with grants of summary judgment in Innovative's favor on certain elements of some of those claims. *See Id.* at 20-21.

PLAINTIFF'S NOTICE AND MOTION FOR REASONABLENESS DETERMINATION - 3
(2:22-CV-00296-JCC)

**D.    The Settlement**

The settlement provides that Houlihan pay Innovative $3,000,000.00 in exchange for dismissal and release of all of Innovative's claims against Houlihan with prejudice. Guess Dec. Exhibit A. The settlement further provides that it "is a compromise of disputed claims" and that it should not "be construed as an admission of fault or liability by any party or any person released, all of which Parties and persons expressly deny fault and liability." *Id*. at 3. Houlihan's insurer, State Farm is prepared to pay its Business Liability policy limits of $3,000,000.00 to resolve the claims between Innovative and Houlihan. Guess Dec. ¶7; Exhibit B at 2.

The settlement also provides, among other things, that to the extent "Innovative reaches a settlement agreement with Pilgrim's, Houlihan agrees it will, at Innovative's direction: (i) dismiss with prejudice any and all of its remaining claims against Pilgrim's in the Action; and (ii) execute a release with respect to Pilgrim's in which any and all of Houlihan's claims, which were or could have been brought in the action, will be released." Guess Dec. Exhibit A at 2.

### III.    AUTHORITY & ARGUMENT

**A.    Each *Glover* Factor Supports a Reasonableness Finding**

The only issue before this Court is whether the $3,000,000.00 settlement amount is reasonable, pursuant to RCW 4.22.060, considering the facts of this case and the claims being resolved. Under Washington law, the Court is guided by the factors set forth in *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708 (1983) overruled on other grounds by *Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695 (1988).

Here, Innovative and Houlihan reached the subject settlement after extensive arm's length negotiations over the course of more than a year, including two separate mediations. Both Innovative and Houlihan have assessed the risks each faces if this case proceeds to trial and agree that this settlement represents a fair and reasonable assessment of those risks.

PLAINTIFF'S NOTICE AND MOTION FOR REASONABLENESS DETERMINATION - 4
(2:22-CV-00296-JCC)

Washington courts have adopted the reasonableness hearing process of RCW 4.22.060 and apply the nine *Glover* factors to determine reasonableness for settlements under this tort statute. The *Glover* factors are:

1) The releasing party's damages;

2) The merits of the releasing party's liability theory;

3) The merits of the released party's defense theory;

4) The released party's relative faults;

5) The risks and expenses of continued litigation;

6) The released party's ability to pay;

7) Any evidence of bad faith, collusion, or fraud;

8) The extent of the releasing party's investigation and preparation of the case; and

9) The interests of the Parties not being released.

*Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d at 717.

While each *Glover* factor supports a finding of reasonableness here, "no one factor should control." *Id*. at 718.

### 1. First Factor: Innovative's alleged damages against Houlihan exceed $18,000,000.

Innovative's alleged damages for which Houlihan can be held responsible exceed $18,000,000. Guess Dec. at ¶ 8. Although Houlihan disputes such damages, it does not deny that a judgment against Houlihan and Pilgrim's could exceed $18,000,000. Houlihan acknowledges that its possible allocation of exposure could be greater than the $3,000,000 policy limits in its insurance agreement and is uncertain of its ability to pay a judgment greater than $3,000,000. *Id*. at ¶ 9. This factor favors a finding that the settlement is reasonable.

### 2. Second Factor: the Court has issued summary judgment on liability.

Innovative, on summary judgment, has already established liability against Houlihan on the following claims:

1. Breach of Contract (Dkt. No. 247 at 16);

2. Breach of Express Warranty (*Id*.);

3. Breach of Implied Warranty of Merchantability (*Id*. at 17); and

4. Breach of Implied Warranty of Fitness for a Particular Purpose (*Id*. at 20).

For these claims, the only issue remaining for the jury would be to determine the damage amount to which Innovative is entitled. This factor favors a finding that the settlement is reasonable.[3]

    **3.**     **Third Factor: Certain of Houlihan's defenses have been dismissed and the remaining defenses are subject to the factual determinations.**

Similar to the second factor, the Court's rulings on summary judgment in this case dismissed certain of Houlihan's defenses, but the remaining defenses could allocate fault to Innovative. More specifically, Houlihan still has two affirmative defenses available: (1) contributory negligence and (2) that the fault of other entities who contributed to Innovative's damages should be apportioned under RCW 4.22.070. Innovative acknowledges that proceeding to trial presents a risk that Innovative receive some portion of fault that would reduce the amount of a jury award, or that the jury may apportion fault to other non-parties, reducing the amount of Houlihan's share of the damages. This factor favors a finding that the settlement is reasonable.

    **4.**     **Fourth Factor: Houlihan's relative fault is significantly less than Pilgrim's.**

The apportionment of fault to Houlihan will ultimately be a contested issue at trial. Two specific facts affect Houlihan's relative fault in comparison to Pilgrim's. First, Houlihan never took physical possession of the 584 Chicken and, therefore, Houlihan would contend at trial it had no ability to determine the defective nature of the product. Second, Pilgrim's, and not Houlihan,

---

[3] Notably, Innovative is releasing *all of its claims* against Houlihan, including claims not subject to joint and several liability (*i.e.*, breach of contract). Nonetheless, because other remaining claims are subject to joint and several liability (*e.g.*, breach of express warranty, breach of implied warranty, negligent misrepresentation, and negligence), Innovative and Houlihan are providing this Notice and seeking a reasonableness determination.

PLAINTIFF'S NOTICE AND MOTION FOR REASONABLENESS DETERMINATION - 6
(2:22-CV-00296-JCC)

manufactured the chicken, packaged it, placed it into the market, and originated the misrepresentations about its quality and nature. Indeed, substantial evidence demonstrates Pilgrim's was informed repeatedly—over an extended period of time—that 584 Chicken was deficient. Dkt. No. 247 at 8-9. Relevant communications included numerous complaints regarding its quality and bone content, even referring to the product as "sh[it] in a box." Dkt. No. 153 at 8-11. This evidence, when presented to the jury, will establish Pilgrim's as the primary wrongdoer responsible for most of the damage. This factor favors a finding that the settlement is reasonable.

### 5. Fifth Factor: the risks and expenses of continued litigation are significant for both parties.

As set forth previously, Innovative has already incurred $2.7 million in attorneys' fees and costs in the litigation and estimates substantial additional fees and costs will be incurred in trying specific claims against Houlihan. Guess Decl. at ¶ 5. Houlihan has indicated it will also incur substantial fees when proceeding to trial. *Id*. The risks and expense involved in taking these claims to trial, weighed against the certainty that accompanies reaching a settlement of the claims between Innovative and Houlihan, demonstrate that the settlement is a reasonable choice. Indeed, "the risk and cost of proceeding to trial" is a "factor[] which may serve to reduce the amount of a settlement." *Chaussee v. Maryland Casualty Co.*, 60 Wn. App. 504, 513 (1991). Additionally, while Houlihan disputes the merits of the negligence-based claims against it and disputes the amount of Innovative's damages, it acknowledges that the possibility exists that the jury could return a verdict against Houlihan in excess of its insurance policy limits. This presents a significant risk that Houlihan seeks to avoid by entering into this settlement.

### 6. Sixth Factor: Houlihan's ability to pay the settlement favors a reasonableness finding.

Reasonableness hearings pursuant to RCW 4.22.060 are most often conducted in the context of a covenant judgment, whereby the parties stipulate to a judgment amount against the defendant, but the plaintiff covenants not to execute on the judgment in exchange for an assignment

to the plaintiff of any claims the defendant may have against its insurer. *See Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 761 (2012) ("These settlements typically involve a stipulated judgment against the insured, a convent not to execute on that judgment against the insured, and an assignment to the plaintiff of the insured's bad faith claim against the insurer. This is referred to collectively as a covenant judgment.").

Under this framework, if the settlement defendant is unable to pay the settlement amount or is judgment-proof, this factor will weigh against a reasonableness finding, in favor of a lower settlement amount. *Woods v. Milionis Constr., Inc.*, 198 Wn.2d 105, 129 (2021) ("When a defendant, '[b]y virtue of [a] bankruptcy discharge' has a 'complete defense to personal liability,' courts recognize the 'reasonableness of a settlement . . . is open to question because the insured will have no incentive to minimize the [settlement] amount.'" (quoting *Werlinger v. Warner*, 126 Wn. App. 342, 351 (2005)). Here, unlike in a covenant judgment situation, Houlihan will be paying Innovative the full $3,000,000 settlement amount.

Houlihan is also tendering its insurer's policy limits. Likewise, Houlihan's counsel has informed Innovative's counsel that, beyond the insurance proceeds, Houlihan does not have any other assets to pay this judgement. Guess Decl. at ¶ 9. Innovative's counsel, which understands the nature of Houlihan's business (*i.e.*, broker of goods), believes that Houlihan's counsel's representations are accurate. *Id*. As such, Innovative finds it highly unlikely Houlihan would be able to pay a judgment greater than $3,000,000. *Id*. Indeed, "the released [party's] ability to pay [is a] factor[] which may serve to reduce the amount of a settlement." *Chaussee,* 60 Wn. App. 513. Because Houlihan has a limited ability to pay a judgment greater than $3,000,000, this would counter an argument that the settlement should be for a greater amount. Therefore, this factor favors a finding that the settlement is reasonable.

7. **Seventh Factor: there is no evidence of bad faith, collusion, or fraud.**

The express public policy of the State of Washington strongly encourages settlement. *See, e.g., City of Seattle v. Blume*, 134 Wn.2d 243, 258 (1997). And in a reasonableness hearing the

PLAINTIFF'S NOTICE AND MOTION FOR REASONABLENESS DETERMINATION - 8
(2:22-CV-00296-JCC)

Court "cannot infer bad faith, collusion, or fraud merely based on innuendo and speculation alone." *Martin v. Johnson*, 141 Wn. App. 611, 623 (2007). The settlement at issue is the product of arm's length negotiations between Innovative and Houlihan that spanned more than a year, with a competent and independent mediator. The Parties all took extensive discovery and depositions in this case, which involved contested issues, and the Parties engaged in substantial dispositive motion practice. Moreover, there is no evidence of bad faith, collusion or fraud, as demonstrated by the fact that Houlihan's insurer is paying its policy limits. This factor favors a finding that the settlement is reasonable.

### 8. Eighth Factor: Innovative's investigation and preparation of its case was extensive.

The Court knows of Innovative and its counsel's preparation and investigation in this case, as demonstrated by the extensive summary judgment briefing and marshaling of evidence. *See* Dkts. 153, 154, 155, 174, 178, 179, 193, 194, and 195. This factor favors a finding that the settlement is reasonable.

### 9. Ninth Factor: Pilgrim's interests are furthered by this settlement.

Resolution of the claims between Innovative and Houlihan streamlines and simplifies the case and will make it easier for a jury to understand. This benefits Pilgrim's as well as Innovative and Houlihan. Even if the Court were to determine that this factor is neutral or favors Pilgrim's, the remaining factors discussed above all militate in favor of a finding that the settlement between Innovative and Houlihan is reasonable. *Adams v. Johnston*, 71 Wn. App. 599, 607 (1993) ("a determination of reasonableness is a matter of balance for which there is no one overriding factor.")

## IV. CONCLUSION

Per RCW 4.22.060(1), Innovative and Houlihan files this Notice and Motion related to settlement and asks the Court for a reasonableness determination after a hearing, which shall transpire at a time of the Court's choosing. For the foregoing reasons, the Court should find that the settlement is reasonable.

PLAINTIFF'S NOTICE AND MOTION FOR REASONABLENESS DETERMINATION - 9
(2:22-CV-00296-JCC)

I certify that this memorandum contains 2,852 words, in compliance with the Local Civil Rules.

Dated: November 13, 2024.    Respectfully submitted,

K&L GATES LLP

By: *s/ Philip M. Guess*
Philip M. Guess, WSBA #26765
Emaan R. Jaberi, WSBA #56990
925 Fourth Ave., Suite 2900
Seattle, WA 98104-1158
Phone   (206) 623-7580
Email:   philip.guess@klgates.com
              emaan.jaberi@klgates.com

Elizabeth H. White, WSBA #58976
Henry G. Ross, WSBA #51591
One SW Columbia Street, Suite 1900
Portland, OR 97204
Phone:   (503) 228-3200
Email:    elizabeth.white@klgates.com
               henry.ross@klgates.com

*Attorneys for Plaintiff*

PREG O'DONNELL & GILLETT PLLC

By: *s/ Daniel Rankin*
Daniel Rankin, WSBA #49673
Bennett J. Hansen, WSBA #24205
401 Union Street, Suite 1900
Seattle, WA  98101
Email: drankin@pregodonnell.com
            bhansen@pregodonnell.com

*Attorneys for Defendant Houlihan Trading Co., Inc.*

# CERTIFICATE OF SERVICE

I, Philip M. Guess, certify under penalty of perjury under the laws of the State of Washington that on November 13, 2024, I caused to be served a true and correct copy of the foregoing document on:

| | |
|---|---|
| Bennett J. Hansen<br>Daniel Rankin<br>Preg O'Donnell & Gillett PLLC<br>401 Union Street Suite 1900<br>Seattle, WA 98101<br>Email: bhansen@pregodonnell.com<br>         drankin@pregodonnell.com | ☐ Via Email<br>☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☒ Via CM/ECF |
| Theo A. Lesczynski<br>Davis Wright Tremaine, LLP<br>920 Fifth Avenue, Suite 3300<br>Seattle, WA 98104<br>Email: theolesczynski@dwt.com | ☐ Via Email<br>☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☒ Via CM/ECF |
| Kevin Kuhlman, *pro hac vice*<br>Daniel Blegen, *pro hac vice*<br>Sarah Hobbs, *pro hac vice*<br>Spencer Fane LLP<br>1000 Walnut Street, Suite 1400<br>Kansas City, MO 64106<br>Email: kkuhlman@spencerfane.com<br>         dblegen@spencerfane.com<br>         shobbs@spencerfane.com | ☐ Via Email<br>☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☒ Via CM/ECF |

DATED: November 13, 2024

By: *s/ Philip M. Guess*
Philip M. Guess

CERTIFICATE OF SERVICE - 1