THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

INNOVATIVE SOLUTIONS
INTERNATIONAL, INC.,

              Plaintiff,

    v.

HOULIHAN TRADING CO., INC, *et al.*,

              Defendants.

CASE NO. C22-0296-JCC

ORDER

This matter comes before the Court on Plaintiff Innovative Solutions International, Inc.'s (hereinafter "Plaintiff" or "Innovative") motion for treble damages, attorney fees, and post-judgment interest (Dkt. No. 355). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

## I.    BACKGROUND

The above-captioned matter arose out of a supply chain dispute associated with chicken "breast trim." (*See generally* Dkt. No. 83.) Innovative initially filed its complaint on March 10, 2022, against Houlihan Trading Co., Inc. ("Houlihan") and other defendants yet to be determined at the time (*i.e.*, Does 1–20). (Dkt. No. 1 at 1.) On June 8, 2022, Innovative amended its complaint to include, amongst others, Defendant Pilgrim's Pride Corporation ("Pilgrim's"). (Dkt. No. 14 at 1.) The pleadings stage then proceeded in piecemeal. For instance, Innovative amended its complaint two more times, (*see* Dkt. Nos. 22, 83), and dismissed several defendants

voluntarily, (*see* Dkt. Nos. 62, 63). There was a flurry of crossclaims and counterclaims, (*see, e.g.*, Dkt. Nos. 26, 46, 90), and various motions to dismiss, (*see, e.g.*, Dkt. Nos. 59, 80, 86, 111, 112, 131). After about a year of litigating through the pleadings stage, only Houlihan and Pilgrim's remained as defendants. (*See* Dkt. No. 139 at 2) (dismissing Defendant Cook International Trade & Brokerage, Inc., for lack of personal jurisdiction, leaving only Houlihan and Pilgrim's as defendants). From there, the parties engaged in fierce motions practice, with cross-motions for summary judgment (Dkt. Nos. 153, 162), a motion to exclude expert testimony (Dkt. No. 160), and a motion to bifurcate trial (Dkt. No. 197). Finally, in preparation for trial, the parties submitted joint motions *in limine* (Dkt. No. 256) and over a thousand pages of deposition designations, (*see generally* Dkt. No. 263).

At last, on December 2, 2024, the parties commenced a jury trial. (Dkt. No. 316.) The presentation of evidence proceeded over the course of six days. (*See* Dkt. No. 334.) After a day of deliberating, the jury rendered a verdict in favor of Innovative. (*See generally* Dkt. No. 339.) Specifically, the jury found that Innovative prevailed against Pilgrim's on its claims of negligence, negligent misrepresentation, and violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq*. (*See id*. at 1, 3, 4.) The jury then awarded Innovative with $10,500,000 for all three claims. (*See id*. at 2, 3, 4.) Innovative now seeks $25,000 in treble damages and $4,447,465 in reasonable attorney fees (based on 6,118.3 hours of work and including a 1.25 lodestar multiplier) under the CPA, as well as post-judgment interest pursuant to 28 U.S.C. § 1961. (*See generally* Dkt. No. 355.)

## II.    DISCUSSION

### A.    Treble Damages

The CPA authorizes a court, in its discretion, to award treble damages provided that the award does not exceed $25,000. RCW 19.86.090. These treble damages are meant to serve multiple purposes, including (1) financial rehabilitation of the injured consumer; (2) encouraging private citizens to bring actions benefiting the public; (3) deterrence; and (4) punishment.

*Gamble v. State Farm Mutual Auto. Ins. Co.*, 2022 WL 92985, slip op. at 7 (W.D. Wash. 2022) (citing *Sing v. John L. Scott, Inc.*, 920 P.2d 589, 598 (Wash. Ct. App. 1996), *rev'd on other grounds*, 948 P.2d 816 (Wash. 1997)).

Innovative contends that an award of treble damages in this case will serve all four purposes. (Dkt. No. 355 at 10.) Pilgrim's does not respond to this point. Instead, it argues that Innovative is not entitled to treble damages because "the verdict and judgment [do] not denominate a specific award under the CPA such that an award of CPA damages can appropriately be trebled." (Dkt. No. 361 at 12.) Pilgrim's ostensibly argues that there are no "actual" CPA damages upon which any treble damages may be based because the jury did not partition the award between Innovative's CPA, negligence, and negligent misrepresentation claims. (*See* Dkt. No. 361 at 12.) The Court disagrees.

To be sure, treble damages under the CPA must be based upon damages awarded solely for the CPA violation. *See Anderson v. State Farm Fire & Cas. Co.,* 2024 WL 3598505, slip op. at 1 (W.D. Wash. 2024) (citing *Gamble*, 2022 WL 92985, slip op. at 7). For instance, in *Anderson*, the court declined to award treble damages where "[t]he jury did not partition the $1 million award by the bad faith, CPA, or negligence claims." *Id*. However, as discussed below, Innovative's claims were so intertwined with their factual premises that it was not possible to "partition" the damages between them. *See infra* Section II.B.2. In other words, it is not that the jury failed to allocate a portion of the $10,500,000 damages award between each claim; rather, each claim individually could have given rise to the $10,500,000—as evidenced by the fact that the jury awarded that same amount for each individual claim. (*See* Dkt. No. 339 at 2, 3, 4.)

That said, the Court finds that treble damages are not warranted here. Though the jury's award of $10,500,000 represents only the actual damages Innovative sustained, the Court is more than satisfied that this award also already adequately serves the same purposes as those of treble damages under the CPA. The Court therefore DENIES Innovative's request for treble damages.

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26

### B.  Attorney Fees

#### 1.  Legal Standard

"In a diversity action the question of attorney[] fees is governed by state law." *Klopfenstein v. Pargeter*, 597 F.2d 150, 152 (9th Cir. 1979) (citations omitted). Under the CPA, a prevailing plaintiff may recover "the costs of the suit, including a reasonable attorney's fee." RCW 19.86.090. This requires calculating a lodestar figure. *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 203 (Wash. 1983). In turn, the lodestar calculation involves multiplying the "hours reasonably expended" by "the reasonable hourly rate of compensation." *Id*. In determining the "hours reasonably expended," a court must "discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." *Id*. As for the reasonable hourly rate, "[w]here the attorneys in question have an established rate for billing clients, that rate will likely be a reasonable rate." *Id*.

Innovative seeks $4,447,465 in attorney fees, which includes a $3,557,972 lodestar figure and a 1.25 multiplier. (Dkt. No. 355 at 17.) Pilgrim's challenges Innovative's request on all fronts. (*See* Dkt. No. 361 at 4–10.)

#### 2.  Segregating CPA Time

First, Pilgrim's argues that Innovative's request is unreasonable because Innovative included time spent litigating other claims when the statute only authorizes fees for the CPA claim. (Dkt. No. 361 at 4–7.) Where "an attorney fees recovery is authorized for only some of the claims, the attorney fees award must properly reflect a segregation of the time spent on issues for which attorney fees are authorized from time spent on other issues." *Hume v. Am. Disposal Co.*, 880 P.2d 988, 997 (Wash. 1994) (citations omitted) (cleaned up). "Where, however, the trial court finds the claims to be so related that no reasonable segregation of . . . claims can be made, there need be no segregation of attorney fees." *Id*. (citations omitted). Said differently, if the claims "'involve[] a common core of facts and circumstances,'" then they are so "interrelated" that "the time devoted to discovery, pretrial motions and preparation and trial of th[e] intertwined

ORDER  
C22-0296-JCC  
PAGE - 4

action cannot be reasonably segregated." *Miller v. Kenny*, 325 P.3d 278, 304 (Wash. Ct. App. 2014).

Here, Innovative's CPA claim relied on the *same exact* facts and circumstances as those used to prove its negligence and negligent misrepresentation claims. As Innovative notes, all three claims arose from Pilgrim's "misrepresentations about the 584 Chicken." (Dkt. No. 355 at 14.) Innovative further submits that it "would not have pursued the case differently had it only pursued the CPA claim," nor could it have, because its CPA theory ultimately relied on the underlying theory that Pilgrim's acted negligently. (*Id.*; *see also* Dkt. No. 354 at 4–6) (Innovative's counsel explaining to the jury that its CPA, negligence, and negligent misrepresentation claims all rely on the fact that Pilgrim's was producing and selling "nonconforming product"). This remains the case even when accounting for Innovative's prior claims of express and implied warranty, which it later dismissed voluntarily. That is, the Court need not segregate the time Innovative spent pursuing the express and implied warranty claims because they—like the negligence and negligent misrepresentation claims—were centered on the fact that Innovative received a product from Pilgrim's that did not conform to Pilgrim's representations. (*See*, *e.g.*, Dkt. No. 297 at 46, 50, 54) (describing Innovative's theories for its express and implied warranty claims).

Of course, Pilgrim's nevertheless maintains that the Court should deny Innovative's fee request altogether—or at least heavily discount it. (Dkt. No. 361 at 7–8.) But Pilgrim's makes no effort to refute Innovative's contention that the claims are inextricably linked. (*See generally id*.) In turn, the Court is satisfied that Innovative's billing entries reasonably reflect the hours it spent pursuing its CPA claim (with some rare exceptions as raised in Section II.B.3 below).[1]

---

[1] Of note, Innovative's counsel even admits that it went through the effort of preemptively removing and discounting time spent on "certain tasks that are not properly related to the Washington CPA claim." (Dkt. No. 356 at 2.) This further confirms for the Court that Innovative's remaining billing entries largely reflect the time it spent pursing its CPA claim.

3.    Discounting for Defective Billing Entries

Pilgrim's next argues that many of Innovative's billing entries constitute inappropriate block-billing[2] or are so vague as to warrant discounting.[3] (Dkt. No. 361 at 8; *see also generally* Dkt. No. 362-2) (reflecting Pilgrim's specific objections to each of Innovative's billing entries). The Court agrees.

An attorney seeking reasonable fees "must provide reasonable documentation of the work performed." *Bowers*, 675 P.2d at 203. "This documentation need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work." *Id*. In turn and as noted, a court must "discount" a fee for hours spent on "duplicated effort" or "otherwise unproductive time." *Id*. This includes discounting for entries that are unreasonably block-billed, *cf. McClincy Brothers Floor Covering, Inc. v. Carpenter*, 2017 WL 1314222, slip op. at 15 (Wash. Ct. App. 2017) (affirming trial court's fee award where block billing did not impact the trial court's ability to assess reasonableness), or so vague that they affect a court's ability to assess the reasonableness of the fees requested, *see Ewing v. Glogowski*, 394 P.3d 418, 422–423 (Wash. Ct. App. 2017) (affirming fee discount where trial court found "a few entries which cannot be attributed because they are vague or blank").

---

[2] "Block billing is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Sierra Club v. BNSF Ry. Co.*, 276 F. Supp. 3d 1067, 1073 (W.D. Wash. 2017) (quoting *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007)).

[3] Pilgrim's also argues that Innovative's fee "improperly includes 217 different entries that are more appropriately characterized as administrative, . . . [which] is not recoverable through this fee application." (Dkt. No. 361 at 10.) But Pilgrim's cites no law for this contention. In turn, the Court declines to discount Innovative's fee request for "administrative" work—particularly where the purported administrative work was nonetheless completed at the request of counsel in furtherance of the litigation. (*See, e.g.*, Dkt. No. 362-2 at 169) (Pilgrim's objected to entry # 2714 as administrative, but that entry clearly states that the work was done at counsel's request to support trial).

Some of Innovative's billing entries are formatted in such a way that the Court cannot assess whether time spent on each task was reasonable. For instance, one attorney spent 6.9 hours on the following tasks: "[r]eview and revise response to North South Motion to dismiss; finalize e-service stipulation; attention to Pilgrim's motion to dismiss; multiple communications with P. Guess regarding same; correspondence with opposing counsel." (Dkt. No. 356-4 at 17.) As an initial matter, the Court observes that any time spent addressing former Defendant North South's motion to dismiss is unlikely to be related to Innovative's successful CPA claim and therefore ineligible for an award. To that end, because the entry is block-billed, the Court cannot determine how much time counsel spent responding to North South's motion to dismiss, as opposed to the other tasks listed, for purposes of discounting. Other similar examples include entry #763, (Dkt. No. 362-4 at 21), entry #1669, (*id*. at 46), entry #1676, (*id*. at 47), and entry #1845, (*id*. at 54), to name a few.

Likewise, some of Innovative's entries are unreasonably vague. For instance, several of the entries either leading up to or during trial merely state "trial preparation" or "trial," without more. (*See id*. at 161–70.) Yet other entries during this same period are quite comprehensive, including one attorney who wrote: "[p]reparation before fourth day of trial; attend and facilitate fourth day of trial; debrief after fourth day of trial; meet to discuss and work through the new proposed jury instructions and verdict form." (*Id*. at 169.) As such, it was possible, and certainly advisable, for counsel to at least explain what type of preparation they did for trial.

Given the extent of block-billing and vague entries, the Court agrees with Pilgrim's that "it is challenging to accurately quantify how much of the billed time was excessive" or duplicative. (Dkt. No. 361 at 10.) Accordingly, the Court DECREASES the block-billed and vague hours, as indicated in Pilgrim's objections (Dkt. No. 362-2), by 20%. *Sierra Club v. BNSF Ry. Co.*, 276 F. Supp. 3d 1067, 1073–74 (W.D. Wash. 2017) (reducing block-billed and vague hours by 20% based on a report by the California State Bar's Committee on Mandatory Fee Arbitration that block-billing may increase time by 10% to 30%).

### 4.    1.25 Multiplier

Finally, Pilgrim's challenges Innovative's counsel's request for a 1.25 lodestar multiplier.[4] (Dkt. No. 361 at 10–11.) A court may consider increasing the final lodestar amount for two reasons: (1) the contingent nature of success, and (2) the quality of work performed. *Bowers*, 675 P.2d at 204. As to the first reason, "the risk factor should apply only where there is no fee agreement that assures the attorney of fees regardless of the outcome of the case." *Id*. As to the second reason, a court may adjust the lodestar only "[i]n exceptional cases . . . to reflect the quality of work"—such as, for instance, where "the representation is unusually good." *Id*. Again, this is an especially high threshold. Indeed, an "attorney's efficiency, his ability to produce results in the minimum time," and more, are "factor[s] which will be reflected by the reasonable hourly rate." *Id*. at 205. In other words, attorneys with a reputation for high caliber work and who perform consistent with that reputation will already have said quality reflected in their reasonable hourly rate; as such, they need not receive an upward adjustment to their fee award. *See id*. The burden of justifying any adjustment to the lodestar rests on the party proposing the adjustment. *Id*. at 204.

Innovative's counsel is not entitled to a lodestar multiplier. First, at no point does it assert that it is litigating this case under a contingent fee arrangement. (*See generally* Dkt. Nos. 355, 363) (counsel's briefings are silent as to its fee arrangement with Innovative). And the Court need not inquire further where counsel bears the burden of justifying the adjustment. *Bowers*, 675 P.2d at 204. Second, though the quality of Innovative's counsel's representation was impressive and admirable, it was not so exceptional as to warrant a multiplier. To the contrary, the Court is more than satisfied that Innovative's counsel's hourly rate already accounts for its

---

[4] Innovative's counsel seeks to multiply its lodestar amount of $3,557,972 by 1.25 for a total fee award of $4,447,465. (Dkt. No. 355 at 15–17.)

excellent work.[5] *See id.* Moreover, even if the Court were compelled to increase counsel's award purely for its excellent work, Washington law would preclude the Court from doing so. Innovative's own cases confirm that courts are extremely reticent to apply a multiplier for exceptional quality of work alone. *See*, *e.g.*, *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1073–74 (Wash. 1993) (affirming trial court's award of 1.5 multiplier where "exceptional quality was not the only factor which caused the trial court to enhance the lodestar"); *Carlson v. Lake Chelan Cmty. Hosp.*, 75 P.3d 533, 546 (Wash. Ct. App. 2003) (questioning whether trial court's "findings [were] sufficient to support a multiplier based on work quality," but affirming multiplier anyway "based on the risk factor"); *Somsak v. Criton Techs./Heath Tecna, Inc.*, 52 P.3d 43, 50–51 (Wash. Ct. App. 2002) (affirming multiplier where trial court found "significant risk" that attorney might never receive payment given the contingent nature of the case *and* that the case was undesirable to counsel). As such, this Court, applying Washington law, cannot justify Innovative's counsel's request for a 1.25 multiplier.

     5.   Conclusion

Consistent with the above findings, the Court GRANTS in part Innovative's request for attorney fees in the final amount of $2,974,671.60. The Court reached this figure as follows. First, the Court removed the 1.25 lodestar multiplier, thus bringing the $4,447,465 figure down to $3,557,972. The Court then discounted Innovative's block-billed and vague entries (totaling $2,588,035 and $328,467, respectively) by 20%. This resulted in a $583,300.40 discount, which the Court subtracted from $3,557,972 to reach the final award amount of $2,974,671.60.

**C.    Post-Judgment Interest**

Separately, Innovative requests post-judgment interest for both the damages award and attorney fees under 28 U.S.C. § 1961. (Dkt. No. 355 at 17.) Pilgrim's does not oppose. (*See*

---

[5] Indeed, Innovative's lead trial counsel billed $825 per hour and $605 per hour, both of which are consistent with the local market rate for attorneys of this caliber. (*See* Dkt. No. 365-5 at 2; *see also* Dkt. No. 356 at 3) (Innovative revised the reasonable rates of its attorneys to be consistent with its local market rate).

*generally* Dkt. No. 361.) Post-judgment interest is mandatory and determined by federal law, even in diversity cases. 28 U.S.C. § 1961(a); *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988) (citations omitted). It also extends to awards of attorney fees. *See Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) (citing cases where post-judgment interest has been applied to attorney fees).

Accordingly, the Court GRANTS Innovative's request for post-judgment interest on the $10,500,000 damages award, accruing as of December 27, 2024, when this Court entered judgment (Dkt. No. 348). Post-judgment interest for the damages award shall accrue at 4.27% per annum, consistent with the statutory rate for the week preceding the judgment, until paid in full. *See* 28 U.S.C. § 1961(a). The Court further GRANTS Innovative's request for post-judgment interest on the award of attorney fees, accruing as of the date of entry of this Order. Again, post-judgment interest for the award of attorney fees shall accrue at 4.09% per annum, consistent with the statutory rate for the week preceding this Order, until paid in full. *See id*.

## III.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's motion for treble damages, attorney fees, and post-judgment interest (Dkt. No. 355). Specifically, the Court ORDERS as follows:

- Innovative's request for treble damages is DENIED.
- Innovative's request for attorney fees is GRANTED in part and DENIED in part. Defendants shall pay attorney fees in the amount of $2,974,671.60.
- Innovative's request for post-judgment interest is GRANTED. Defendants shall pay post-judgment interest at a rate of 4.27% per annum for the $10,500,000 damages award, accruing from December 27, 2024, until paid in full. Similarly, Defendants shall pay post-judgment interest at a rate of 4.09% per annum for the $2,974,671.60 in attorney fees, accruing from the date of entry of this Order, until paid in full.

//

DATED this 27th day of March 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE