THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INNOVATIVE SOLUTIONS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> HOULIHAN TRADING CO., INC, *et al.*, <br><br> Defendants. | CASE NO. C22-0296-JCC <br><br> ORDER |

This matter comes before the Court on Defendant Houlihan Trading Co., Inc.'s ("Houlihan") post-trial motion for indemnity, equitable subrogation, attorney fees and costs, and post-judgment interest (Dkt. No. 372). Having thoroughly considered the briefing and the relevant record, the Court finds oral argument unnecessary[1] and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

I.      BACKGROUND

The above-captioned matter arose out of a supply chain dispute associated with chicken "breast trim" (hereinafter the "Product"). (*See generally* Dkt. No. 83.) The Court has stated the relevant facts and procedural history of this case in prior orders, (*see generally* Dkt. Nos. 247,

---

[1] Defendant Pilgrim's Pride Corp. ("Pilgrim's") requested oral argument in response to Houlihan's post-trial motion. (Dkt. No. 382 at 1.) The Court deems such argument unnecessary because Pilgrim's has had a full opportunity to submit response papers and supporting evidence. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (oral argument not required if parties are given adequate opportunity to submit papers in support of and/or opposition to the motion).

377), and will not restate them here. Of note, following six days of trial, (*see* Dkt. Nos. 316, 322, 323, 325, 329, 334), the jury rendered a verdict in favor of Houlihan and against Defendant Pilgrim's Pride Corp. ("Pilgrim's") for Houlihan's breach of express warranty claim, (*see* Dkt. No. 339 at 5), and also found Pilgrim's to be solely liable for Innovative's tort-based claims, (*see id.* at 3, 4). The Court entered judgment thereafter. (*See generally* Dkt. No. 348.) Houlihan previewed for the Court that it intended to seek indemnification from Pilgrim's, and the Court deferred ruling on the matter until after trial. (*See* Dkt. No. 311 at 24–25.) Houlihan now moves for post-trial indemnification for (1) its $3 million settlement with Innovative, and (2) attorney fees and litigation costs incurred in defending against Innovative's claims. (*See generally* Dkt. Nos. 372, 385.) Pilgrim's opposes. (*See generally* Dkt. No. 382.)

## II.   DISCUSSION

### A.   Implied Indemnity

#### 1.   Legal Standard

"[W]hile indemnity sounds in contract and tort, it is a separate equitable cause of action." *Central Washington Refrigeration, Inc. v. Barbee*, 946 P.2d 760, 762 (Wash. 1997). "Indemnity in its most basic sense means reimbursement and may lie when one party discharges a liability which another should rightfully have assumed." *Id*. (cleaned up) (citations omitted). The Washington Supreme Court first established the availability of implied indemnity in *Barbee*. *See generally* 946 P.2d 760. There, the court held that "a contractual relationship, under the U.C.C., with its implied warranties, provides a sufficient basis for an implied indemnity claim when the buyer incurs liability to a third party as a result of a defect in the goods which would constitute a breach of the seller's implied or express warranties." *Id*. at 764. In other words, a breach of implied warranties contained in a properly executed U.C.C. contract was a sufficient basis for implied indemnity. *See id*.

The court later extended the availability of implied indemnification to breach of express warranty claims even in the absence of a contract. *See Fortune View Condominium Ass'n v.*

*Fortune Star Development Co.*, 90 P.3d 1062, 1066 (Wash. 2004) ("Express warranties, including those made through advertising [and absent a contractual relationship], provide a sufficient basis for an implied indemnity claim."). In turn, to maintain a claim for implied indemnification, Washington courts typically expect the indemnitee to establish the following: (1) injury to a third party and that third party's right to assert a cause of action against the indemnitor and (2) settlement of the injured third party's claim by the indemnitee, who itself was legally obligated to pay that claim. *See Donald B. Murphy Contractors v. King County*, 49 P.3d 912, 915 (Wash. Ct. App. 2002) (citing *In re New England Fish Co.*, 749 F.2d 1277, 1282 (9th Cir. 1980) (applying Washington law)); *see also Continental Cas. Co. v. Invesco Realty Advisors*, 2005 WL 1378719, slip op. at 3 (W.D. Wash. 2005) (applying same elements).

    2.    <u>Houlihan's Claim for Implied Indemnification</u>

Houlihan argues that Pilgrim's breach of express warranty gives rise to an implied indemnity claim and entitles Houlihan to complete reimbursement of its $3 million settlement with Innovative.[2] (*See* Dkt. No. 372 at 6.) And indeed, Houlihan satisfies both elements of an implied indemnity claim.[3]

As to the first element, there is no doubt that Innovative suffered an injury because the jury ultimately awarded Innovative $10.5 million in damages. (*See* Dkt. No. 339 at 2–4.) And though Innovative voluntarily dismissed its breach of express warranty claim against Pilgrim's in the middle of trial, until then, Innovative's claim was valid. Indeed, Innovative's breach of

---

[2] Houlihan also relies on the doctrine of equitable indemnity as an alternative theory of recovery for its settlement with Innovative. (*See* Dkt. No. 372 at 5, 7.) However, because the Court is granting Houlihan's $3 million reimbursement request under implied indemnity, it declines to consider the same request under equitable indemnity. Instead, the Court will consider Houlihan's equitable indemnity arguments only in the context of attorney fees. This is also consistent with the Court's review of prior case law. *See, e.g.*, *Jakobsen v. Burros*, 2020 WL 1528473, slip op. at 2 (W.D. Wash. 2020) ("As a limited exception, Washington sometimes allows a party to recover attorneys' fees as consequential damages under a theory of equitable indemnity."), *Continental*, 2005 WL 1378719, slip op. at 4 (the doctrine of equitable indemnity "provides an equitable right to attorneys' fees").

[3] Houlihan is the indemnitee, Pilgrim's is the indemnitor, and Innovative is the third party.

1  express warranty claim against Pilgrim's survived summary judgment, with the ultimate factual
2  issue being whether a reasonably jury could conclude that "breast trim" was understood to be
3  boneless. (*See* Dkt. No. 247 at 5–7.) Of note, the Court denied Houlihan's summary judgment
4  motion against Pilgrim's for the exact same reason. (*See id*. at 7 n. 13.) And the jury ultimately
5  concluded that "breast trim" was, in fact, understood to be boneless, because it found in favor of
6  Houlihan on its breach of express warranty claim. (Dkt. No. 339 at 5.) All of which is to say, at a
7  minimum, Innovative had a right to assert various causes of action against Pilgrim's, including
8  breach of express warranty.

9  And yet, as to the second element, it was Houlihan who settled with Innovative on the
10 eve of trial (including Innovative's breach of express warranty claim). (*See generally* Dkt. No.
11 291.) Understandably so, as the Court previously found Houlihan liable to Innovative for breach
12 of express warranty. (Dkt. No. 247 at 16.) But most importantly, implicit in these proceedings
13 was the understanding that both Innovative's and Houlihan's claims against Pilgrim's relied on
14 the fact that Pilgrim's failed to deliver a product that conformed with its express warranties. (*See*
15 Dkt. No. 353 at 49) (Innovative sued Houlihan and Pilgrim's because "the [P]roduct was so non-
16 conforming and so grossly out of specification"); (*see also* Dkt. Nos. 353 at 47–48, 375 at 21)
17 (regardless of whether Houlihan bought the Product from a broker or from Pilgrim's directly,
18 Houlihan believed it was selling "[b]oneless, skinless breast trim" to Innovative based on
19 Pilgrim's product label and fact sheet). And as noted, "[i]ndemnity in its most basic sense means
20 reimbursement . . . when one party discharges a liability which another should rightfully have
21 assumed." *Barbee*, 946 P.2d at 762.

22 Accordingly, Houlihan is entitled to implied indemnity. Pilgrim's must reimburse
23 Houlihan in full for its settlement with Innovative. Moreover, because the Court GRANTS
24 Houlihan's request for implied indemnity, it DENIES Houlihan's request for equitable
25 subrogation as moot.
26

**B.    Equitable Indemnity**

    1.    Legal Standard

Under Washington law,[4] a court may not award attorney fees absent a contract, statute, or recognized ground of equity. *Blueberry Place Homeowner's Ass'n ("HOA") v. Northward Homes, Inc. ("Northward")*, 110 P.3d 1145, 1149 (Wash. Ct. App. 2005). However, one of those grounds is equitable indemnification. *Id*. The doctrine provides that "where the acts or omissions of a party to an agreement or event have exposed [another party] to suit by persons not connected with the initial transaction or event," the exposed party may be entitled to attorney fees and costs. *Porter v. Kirkendoll*, 449 P.3d 627, 636 (Wash. 2019) (cleaned up); *see Manning v. Loidhamer*, 538 P.2d 136, 140 (Wash. Ct. App. 1975). This doctrine is more easily understood as the ABC Rule. *See Porter*, 449 P.3d at 636. That is, if (1) A acts wrongfully toward B, (2) A's wrongful act exposes B to litigation with C, and (3) C was not connected with A's wrongful act toward B, then B may recover attorney fees and costs from A for B's exposure to litigation with C. *See id*. (citing *Manning*, 538 P.2d at 138–39).

    2.    Houlihan's Claim for Equitable Indemnification

Houlihan suggests that it is entitled to equitable indemnification based on the ABC Rule. (Dkt. No. 372 at 5.) The Court agrees. In fact, the application of the ABC Rule to the case at bar is simple. It goes as follows: Pilgrim's (A) breached its express warranty to Houlihan (B). (Dkt. No. 339 at 5.) This breach exposed Houlihan (B) to litigation with its customer, Innovative (C), because it led Houlihan (B) to sell non-conforming product to Innovative (C). (*See* Dkt. No. 352 at 86) (Innovative would not have sued Houlihan if the Product "had not had bones in it"). Innovative (C) was not otherwise involved in Pilgrim's (A) express warranties towards Houlihan (B). (*See* Dkt. No. 375 at 20–21) (explaining Houlihan's various transactions to source the Product, of which Innovative was not involved).

---

[4] "In a diversity action the question of attorney[] fees is governed by state law." *Klopfenstein v. Pargeter*, 597 F.2d 150, 152 (9th Cir. 1979) (citations omitted).

Pilgrim's nevertheless contests Houlihan's claim for equitable indemnity. Specifically, it argues that Houlihan fails to satisfy the second and third prongs of the ABC Rule. (*See* Dkt. No. 382 at 5–9.) The Court takes each in turn.

*Prong Two: A's wrongful act exposes B to litigation with C.* Pilgrim's argues that Houlihan's own conduct exposed it to litigation with Innovative, thereby precluding recovery under the ABC Rule. (*Id*. at 5.) Indeed, a party may not recover under the theory of equitable indemnity "'if, in addition to the wrongful act or omission of A, there are other reasons why B became involved in litigation with C.'" *Porter*, 449 P.3d at 636 (quoting *Tradewell Group, Inc. v. Mavis*, 857 P.2d 1053, 1057 (Wash. Ct. App. 1993)). "The critical inquiry is whether, apart from A's actions, B's own conduct caused it to be 'exposed' or 'involved' in litigation with C." *Id*. (quoting *Tradewell*, 857 P.2d at 1057–58 (cleaned up)).

In *Porter*, the Washington high court held that party C could not recover from party A because party B was independently strictly liable for harvesting timber on party C's land, regardless of party A's misrepresentations of the land to be harvested. *See id*. at 637. There, the Kirkendolls (A) owned land adjacent to Porter (C). *Id*. at 630. The Kirkendolls (A) asked a set of tree loggers (B) to harvest timber off their property, but they misrepresented the scope of their property. *Id*. As a result, the tree loggers (B) harvested timber off Porter's (C) land. *Id*. Porter (C) sued the Kirkendolls (A) and the tree loggers (B). *Id*. Porter (C) and the tree loggers (B) settled, which included the tree loggers' assignment of its indemnity claims against the Kirkendolls (A) to Porter (C). *Id*. Despite the Kirkendolls' (A) misrepresentations of the scope of their land, of which the tree loggers (B) took no part, the Court concluded that Porter (C) could not recover under the ABC Rule because the tree loggers (B) were strictly liable under the timber trespass statute. *Id*. at 637. In other words, the tree loggers' (B) own conduct *independently* exposed them to strict liability, regardless of the Kirkendolls' (A) wrongdoings that led the tree loggers (B) to trespass on the Porters' (C) land. *See id*.

Similarly, in *Stevens v. Sec. Pac. Mortg. Corp. ("Security Pacific")*, 768 P.2d 1007

(Wash. Ct. App. 1989), the court found that party B was not entitled to attorney fees from party A because party B's own conduct *independently* resulted in a breach of contact with party C (separate from party A's wrongdoing). *See id*. at 1014, 1017. The case involved a messy mortgage loan implicating multiple parties.[5] Relevantly, Westinghouse (C) filed a cross-claim against Security Pacific (B) for breach of contract, and, in turn, Security Pacific (B) filed a third-party claim against Advance (A) for indemnity. *Id*. at 1011. The appellate court confirmed that Security Pacific (B) was entitled to indemnity because Advance's (A) misrepresentations led Security Pacific (B) to sell a loan to Westinghouse (C) that did not conform with the latter twos' contract. *Id*. at 1014. Nevertheless, the appellate court denied Security Pacific's (B) request for attorney fees because it refused to replace the loan for Westinghouse (C) even after the loan's faults became apparent, which constituted an independent breach of contract. *Id*. at 1017.

Pilgrim's argues that Houlihan's breach of contract here is analogous to that in *Stevens* and *Porter*. (*See* Dkt. No. 382 at 7–8.) But Pilgrim's misses the mark. The *Stevens* court denied attorney fees to Security Pacific because it also *independently* breached its contract with Westinghouse for failing to replace the faulty loan, regardless of Advance's misrepresentations. *See* 768 P.2d at 1017. Whereas here, there is only a single factual basis for Houlihan's liability: Houlihan delivered a product with bones in it based on Pilgrim's representations that the Product would be boneless. Indeed, Innovative's claims against Houlihan were premised on this sole fact. (*See* Dkt. No. 247 at 15–18) (the Court granted summary judgment in favor of Innovative on its breach of contract claim because Innovative presented indisputable facts that Houlihan delivered "nonconforming" product with bones in it). Innovative confirmed as much at trial. (*See* Dkt. No. 352 at 86) (Innovative would not have sued Houlihan but for the bones in the Product); (*see also*

---

[5] Advance Mortgage Corporation ("Advance") (A) prepared a personal loan for Plaintiff Stevens and then submitted it to Security Pacific (B) for funding. *Id*. at 1010. Advance (A) misrepresented the loan as one issued for a business purpose, even though it knew the loan was for personal use. *Id*. Security Pacific (B) later sold the loan to Westinghouse Credit Corporation ("Westinghouse") (C).

ORDER
C22-0296-JCC
PAGE - 7

Dkt. No. 353 at 47–48) (Innovative would have sued Houlihan for delivering nonconforming product produced by Pilgrim's, regardless of whether Houlihan purchased the Product from brokers or directly from Pilgrim's; in other words, the fact that Houlihan purchased the Product from brokers was not the basis of Innovative's claims). And Pilgrim's does not put forth any other examples or evidence of Houlihan's actions that independently exposed it to litigation with Innovative. (*See* Dkt. No. 382 at 5–8.) Pilgrim's reliance on *Porter*, (*see* Dkt. No. 382 at 8), is likewise unavailing. Houlihan bears no strict liability here, unlike in *Porter*. *See* 449 P.3d at 637. Accordingly, Houlihan satisfies prong two of the ABC Rule.

*Prong Three: C was not connected with A's wrongful act toward B.* Pilgrim's further argues that Houlihan cannot satisfy the third prong because "Innovative asserted a warranty claim against Pilgrim's, just like Houlihan," and "Innovative was affirmatively involved in all aspects of these transactions." (Dkt. No. 382 at 9.) As noted, prong three requires Innovative to be a "stranger" to the transaction between Houlihan and Pilgrim's. *Manning*, 538 P.2d at 769. Pilgrim's appears to construe "stranger" quite literally, requiring that Innovative not separately assert claims against Pilgrim's or, even, have any awareness that Pilgrim's was involved. But Pilgrim's own cases belie this understanding.

For instance, Pilgrim's argues that the third prong was dispositive in *Blueberry Place HOA*, 110 P.3d 1145. (Dkt. No. 382 at 9.) Not so. Rather, that court found that Northward (B) was not entitled to equitable indemnity from certain subcontractors (A) because the subcontractors' wrongful act "was not the only basis for [party C's] claims against [party B]." *Id.* at 1150. In other words, the second prong was dispositive, not the third.[6] More relevantly, just as

---

[6] In this case, Northward (B) was a general contractor for the Blueberry Place condominium development. *Id*. at 1148. Northward (B) hired subcontractors (A) to design and install an ultimately defective heating system for the condominiums. *Id*. Thereafter, the HOA (C) sued Northward (B) and the subcontractors (A) for a variety of construction defects, including the subcontractors' (A) defective heating system. *Id*. Northward (B) then cross-claimed against the subcontractors (A) for breach of contract and indemnity. *Id*. While the subcontractor's (A) defective heating system was certainly one of the reasons why the HOA (C) sued Northward (B),

Innovative here sued both Houlihan and Pilgrim's, the HOA (C) sued both Northward (B) *and* the subcontractors (A). *See id*. at 1148. Pilgrim's does not otherwise present evidence of how Innovative was "affirmatively involved in all aspects of these transactions." (Dkt. No. 382 at 9.) Innovative's position is akin to that of the HOA in *Blueberry Place*. Houlihan, therefore, satisfies the third prong of its equitable indemnity claim.

### 3. Reasonableness of Fee Request

Having determined that Houlihan is entitled to attorney fees, the Court must next assess the appropriate award amount. *See Tradewell*, 857 P.2d at 1057 (the court must first determine whether a legal basis exists for an award of attorney fees, then it must assess the appropriate amount thereof). The process of calculating the award is two-fold. First, the court must calculate the appropriate lodestar figure. *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 203 (Wash. 1983). This involves multiplying the "hours reasonably expended" by "the reasonable hourly rate of compensation." *Id*. In determining the "hours reasonably expended," a court must "discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." *Id*. As for the reasonable hourly rate, "[w]here the attorneys in question have an established rate for billing clients, that rate will likely be a reasonable rate." *Id*. Second, the court may consider upward or downward adjustments to the lodestar figure based on (1) the contingent nature of success, and (2) the quality of work performed.[7] *See id*. at 204. The burden of justifying any

---

it was not the only basis. *Id*. at 1150. Indeed, the HOA (C) also sued Northward (B) for "independent and separate defective construction claims." *Id*. at 1151. Accordingly, that court concluded that Northward (B) could not recover attorney fees or costs from the subcontractors (A) under the theory of equitable indemnity. *Id*. at 1152.

[7] As to the first factor, "the risk factor should apply only where there is no fee agreement that assures the attorney of fees regardless of the outcome of the case." *Id*. at 204. As to the second factor, a court may adjust the lodestar only "[i]n exceptional cases . . . to reflect the quality of work"—such as, for instance, where "the representation is unusually good." *Id*. This is an especially high threshold. Indeed, an "attorney's efficiency, his ability to produce results in the minimum time," and more, are "factor[s] which will be reflected by the reasonable hourly rate." *Id*. at 205. In other words, attorneys with a reputation for high caliber work and who perform

adjustment to the lodestar rests on the party proposing the adjustment. *Id*.

Pilgrim's opposition to Houlihan's fee request is minimal. (*See* Dkt. No. 382 at 12–13.) It primarily challenges Houlihan's request for litigation costs, arguing that such costs are not recoverable "absent specific statutory, contractual, or recognized equitable grounds." (*Id*. at 12.) But as noted, Houlihan's request is based on equitable indemnification. In turn, Houlihan has submitted extensive evidence of hours reasonably expended and rates thereof, thereby justifying its lodestar figure of $427,979. (*See* Dkt. Nos. 373 at 2–3, 374 at 2–4; *see also generally* Dkt. No. 374-1) (Houlihan's counsel's billing entries). Likewise, Houlihan explains that it incurred its litigation costs largely due to the volume of Pilgrim's discovery responses. (*See* Dkt. No. 372 at 14.)[8] The Court therefore finds Houlihan's request for attorney fees and litigation costs to be reasonable.

Houlihan also requests a 1.25 lodestar multiplier. (*Id*. at 15.) But as Houlihan itself notes, "the contingent fee adjustment is admittedly inapplicable here." (*Id*.) Houlihan nevertheless maintains that the Court should apply a multiplier for the exceptional quality of work. (*Id*.) Once again, however, the Court is reticent to apply a multiplier for exceptional quality of work alone. (*See* Dkt. No. 377 at 9) (denying Innovative's request for a lodestar multiplier). Even Houlihan's cited authority cut against its argument. (*See* Dkt. No. 372 at 15) (citing *Bowers*, 675 P.2d 193, and *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054 (Wash. 1993)). That is, neither case resulted in an upward adjustment based solely on exceptional quality of work.[9] Accordingly, the Court DENIES Houlihan's request for a lodestar multiplier.

---

consistent with that reputation will already have said quality reflected in their reasonable hourly rate; as such, they need not receive an upward adjustment to their fee award. *See id*.

[8] Curiously, Houlihan's motion represents the litigation costs to be $294,815.61 at some points and $293,990.61 at others. (*Compare* Dkt. No. 372 at 2, *with id*. at 15). However, its evidence submitted in support thereof reflect the higher amount of $294,815.61. (Dkt. Nos. 373 at 2, 374 at 4, 374-2 at 9.) The Court therefore relies on that higher amount.

[9] In *Bowers*, the Washington high court affirmed the lower court's upward adjustment due to the contingent nature of the case but found error in the lower court's upward adjustment due to

####	4.	Conclusion

To summarize, Houlihan satisfies the ABC Rule and is therefore entitled to attorney fees and costs under the doctrine of equitable indemnification. And Houlihan's request for $427,979 in attorney fees and $294,815.61 in litigation costs is reasonable. But Houlihan is not entitled to a lodestar multiplier.

### C.	Post-Judgment Interest

Finally, Houlihan requests post-judgment interest on its money judgment, attorney fees, and costs. (Dkt. No. 372 at 19–20.) Pilgrim's does not oppose. (*See generally* Dkt. No. 382.) Post-judgment interest is mandatory and determined by federal law, even in diversity cases. 28 U.S.C. § 1961(a); *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988) (citations omitted). It also extends to attorney fee awards. *See Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) (citing cases where post-judgment interest has been applied to attorney fees).

Though the Court entered judgment in favor of Houlihan and against Pilgrim's in the amount of $1,500,000 on December 27, 2024, (*see generally* Dkt. No. 348), it was with the understanding that the jury's damages award was largely perfunctory and that the Court would determine Houlihan's damages in post-trial motions. (*See* Dkt. No. 311 at 24–25) (deferring ruling on equitable indemnification until after trial). In other words, Houlihan's true monetary judgment remained unknown until entry of this Order. As such, post-judgment interest shall begin accruing as of the date of entry of this Order rather than when judgment was entered. Post-judgment interest shall accrue at 3.97% per annum, consistent with the statutory rate for the week preceding this Order, until paid in full. *See* 28 U.S.C. § 1961(a).

---

quality of work because "[n]othing in the record suggests that the work performed by [the] attorneys was significantly better than could be expected from the attorneys who commanded the hourly rates used to calculate the lodestar." 675 P.2d at 601. And in *Washington State Physicians*, that court affirmed the trial court's award of 1.5 multiplier where "exceptional quality was not the only factor which caused the trial court to enhance the lodestar." 858 P.2d at 1073–74.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Houlihan's post-trial motion for indemnity, equitable subrogation, attorney fees and costs, and post-judgment interest (Dkt. No. 372). Specifically, the Court ORDERS as follows:

- Houlihan's request for implied indemnity is GRANTED. Pilgrim's must indemnify Houlihan for its full $3 million settlement with Innovative;
- Houlihan's request for equitable subrogation is DENIED as moot;
- Houlihan's request for attorney fees and costs is GRANTED under the doctrine of equitable indemnity, but its request for a lodestar multiplier is DENIED. Pilgrim's must pay Houlihan $427,979 in attorney fees and $294,815.61 in litigation costs;
- Houlihan's request for post-judgment interest is GRANTED.

The Court will issue a supplemental judgment in accordance with the above rulings and those contained in Docket Numbers 377 and 387.

DATED this 28th day of April 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE